[No. 37782. Department Two. April 21, 1966.]

WILLIAM L. ROBERTS et al., *Appellants,* v. ALBERT C. GOERIG et al., *Respondents.**

*Reported in 413 P.2d 626.

*Vaughn E. Evans*, for appellants.

*A. R. Hart* (of *Martin, Shorts & Bever*), for respondents.

DONWORTH, J.—This is an appeal by two plaintiffs from the judgment entered by the court on a jury verdict in a bodily injury suit arising from a collision of two automobiles. One car was driven by plaintiff William L. Roberts, in which plaintiff Jesse Hoadley was a passenger. The jury awarded $123 damages to Hoadley and none to Roberts. The other car was driven by defendant Albert C. Goerig. Albert Goerig's parents were joined as defendants because

the car was owned by them. Since any liability of the three defendants in this case can only result from defendant Albert Goerig's actions, he will hereafter be referred to as if he were the sole defendant.

The trial court instructed the jury that defendant Goerig was negligent as a matter of law, and gave instructions pertaining to the contributory negligence, if any, of plaintiff Roberts. The jury was directed to find defendant Goerig liable to plaintiff Hoadley for any damages they found that he sustained as a result of the accident. Hereafter, in this opinion, the plaintiffs will be referred to as appellants and the defendant Albert Goerig as respondent.

The accident occurred on August 10, 1962, at about 4:30 p.m. at the intersection of First Avenue South and South 156th Street (south of Seattle city limits, near Burien). The day was clear and sunny and the roadway dry. There is a stop sign which requires all traffic on South 156th Street to stop before entering the intersection with First Avenue South, which is an arterial street. Traffic thereon is not required to stop for the intersection of South 156th Street.

Respondent Goerig was driving his parents' car south on First Avenue South. He had entered First Avenue South a few blocks north, at South 150th Street, at which point First Avenue South is a 4-lane, blacktop thoroughfare (2 lanes in each direction). As he proceeded south thereon, there was a sign near the intersection of South 153rd Street, which stated "pavement narrows." Just before entering the intersection of South 154th Street, there was another sign which read "No Passing—2-lane pavement ahead." At this point, there are lines painted on the pavement to indicate that the two southbound lanes of traffic should merge or funnel into one lane. Just after reaching the intersection with South 154th Street, there was a third sign which read "No Passing —stay in line." At this point the pavement narrows gradually and becomes two lanes of concrete before reaching South 155th Street (one lane for traffic going in each direction, i.e. north and south). There is a ditch at the side of the west shoulder of First Avenue South between South 154th Street and South 155th Street.

· South of the intersection of South 155th Street and First Avenue South, the pavement appears to again widen, so that it was possible and was a frequent occurrence for southbound cars to again form two lanes (one on the concrete and the other on blacktop). There are no warning signs between South 155th and South 156th Street to indicate to southbound drivers that the southbound roadway has not been again widened to two lanes as it had been north of South 154th Street. The evidence relating to the character of the roadway between South 155th and South 156th Streets will be discussed in some detail later in this opinion. A photograph of the scene of the intersection taken from the south side, looking north, is marked by witness Gerald Anderson to show the place of the collision.

The accident occurred as follows: Respondent Goerig testified that he was proceeding south on First Avenue South and wished to turn right onto South 156th Street at that intersection. The traffic was heavy, and a line of cars in the inside lane extended south well beyond South 156th Street, and probably to South 160th Street (which is a main

intersection with traffic control lights). As he approached the intersection, several cars passed respondent Goerig on the right, using the blacktopped lane which appeared to him to be part of the paved roadway.

Goerig stated that he turned out into this so-called right lane and proceeded to pass about 10 cars on the right as he approached South 156th Street, at between 10 and 20 m.p.h. He slowed down to between 5 and 10 m.p.h. as he approached the point of his anticipated right turn.

In the interim, appellant Roberts with his passenger, appellant Hoadley, had approached First Avenue South on South 156th Street from the east side. Appellant Roberts, who was driving, intended to cross First Avenue South and continue west on South 156th Street. He stopped and waited for the long, continuous line of traffic on First Avenue South to give him an opportunity to cross. After about a 2-minute wait, a southbound driver stopped his car just north of the intersection with South 156th Street, and motioned Roberts to cross in front of him. Roberts checked the traffic condition to the south, and, there being no cars approaching from that direction, proceeded across in front of the driver who had stopped for him. Roberts' car passed within 2 feet of the stopped car, and proceeded west through the intersection at about 5 m.p.h.

Neither Goerig nor Roberts saw the car driven by the other until Roberts had proceeded a few feet beyond the car which had stopped. At this point, neither could have avoided a collision. Roberts tried to speed up to clear the intersection, whereas Goerig skidded in an attempt to stop short of impact. Neither driver succeeded in his maneuver, and Goerig's car crashed into the right rear quarter of Roberts' car. The rear quarter panel and hubcap of Roberts' car were damaged.

A very important witness with regard to the question of the liability of respondent Goerig was Mr. Gerald Anderson, who had been the investigating state patrol officer at the scene of the accident. At the time of trial, Mr. Anderson was a King County road district employee. He testified

that First Avenue South narrowed from a 4-lane street (2 lanes in each direction) to a 2-lane street (1 lane in each direction) between South 153rd Street and South 155th Street, and that the three signs referred to above indicate this narrowing to southbound drivers.

He also testified that the private business owners whose property abutted the west side of First Avenue South between South 155th and South 156th Streets had paved with blacktop the area that appears to be the second southbound lane (south of South 155th Street) at the time when the parking lot area in front of their buildings was paved. The parking area was separated from the street by "C-curbing." The state highway department gave them permission so to do, specified the conditions under which such paving could be done, and approved the work. The work permits and the plans in connection with this paving were introduced in evidence and are in the record. The only apparent difference between the inner lane (which is considered by the state and county to be paved roadway) and the "outer lane" (which is considered by the state and county to be a paved shoulder) is that the inner lane is concrete, and the "outer lane" is blacktop. There are no signs to indicate to a southbound driver that only the inner lane is a public highway south of South 155th Street. Both lanes are on the public highway right of way.

Mr. Anderson was asked by the defendant's counsel if he had seen cars use the blacktopped "outer lane" for passing cars and making right turns in the same manner as Goerig had used it. Mr. Anderson stated that he had seen many cars on various occasions so use this lane. On redirect examination, plaintiff's counsel was allowed by the court to ask Mr. Anderson whether he had been given instructions to issue traffic violation tickets to persons driving in the blacktopped "outer lane" as respondent Goerig had done. Mr. Anderson answered that he had been told by his superiors to issue traffic violation citations to such persons. It had developed, on voir dire examination of Mr. Anderson (out of the presence of the jury prior to his giving this testimony). that respondent Goerig had received a traffic

violation citation for negligent driving based on the charges that Goerig was (1) driving on the shoulder, (2) improperly passing, and (3) passing on the right.

The trial court was well aware of King County uniform instruction No. 6, which is an expression of the rule that the conviction of a traffic violation is not to be considered proof of any fact in the case. However, the trial court did indicate that he was weighing the nature of Mr. Anderson's voir dire and proffered testimony to see if it would be relevant to the issue of whether or not the blacktopped outer lane was a part of the roadway or was the shoulder of the road. At the time Mr. Anderson testified, the trial court indicated that it believed this was a jury question.

The second important witness with regard to the liability of respondent Goerig was Mr. Willard E. Baylis, Jr., who was assistant locating engineer district No. 1, state highway department. He testified that First Avenue South at its intersection with South 156th Street was a 2-lane roadway (one lane each direction) and that the blacktopped outer lane differed from the blacktopped surface of both lanes of First Avenue South between South 152nd Street and South 154th Street only because (1) it did not have sufficient foundation to support the heavy trucks and type of traffic expected to use this state highway, and (2) that it was newer.

Mr. Baylis was asked by the trial court why the state had not put in signs south of South 155th Street to indicate that beyond that point First Avenue South was only a 1-lane highway in each direction. He explained that the state had paved First Avenue South as a 4-lane highway coming from the north down to South 154th Street, and had narrowed it to one lane thereafter. The state had placed the signs warning of the narrowing roadway in 1957, at the time the project north of that street had been finished. The blacktopped "outer lane" at South 156th Street had been added by the private landowners in 1960, with permission and approval of the state highway department. Mr. Baylis failed to explain why the state highway department

did not place signs to warn against the use of the black-topped "outer lane," even though he knew, according to his testimony, that cars used this lane in the same manner as respondent did just prior to the accident.

After Mr. Baylis testified, the trial court concluded that respondent Goerig had been driving off the roadway and on the shoulder and was, therefore, negligent as a matter of law.

Mr. Baylis further stated that the roadway of First Avenue South at the intersection with South 156th Street did not have the characteristic, intermittent, white-painted line which normally separates multiple-laned roadways into lanes. This is always done by the state highway department under its highway regulations, according to Mr. Baylis. We note from plaintiff's exhibit No. 5, which is a photograph of First Avenue South, just south of the intersection with South 152nd Street (which is a 4-lane roadway), that the intermittent, white-painted line dividing the two lanes for southbound traffic is so faded as to be practically nonexistent for half the distance between South 152nd and South 153rd Street. As was brought out clearly on cross-examination of Mr. Baylis, this lack of a painted line is the only feature south of South 155th Street which may be considered as an indication to a southbound driver that First Avenue South is *not* a 4-lane roadway between South 155th Street and South 156th Street.

The trial court at this point decided that the question of whether or not First Avenue South was a 2- or 4-lane roadway was a legal question, and not a fact question. It ruled that First Avenue South at the intersection with South 156th Street is a 2-lane roadway.

The trial court instructed the jury on the negligence of respondent Goerig in connection with this issue with the following language:

> The court has determined that the defendants were negligent as a matter of law at the time and place of the accident in question in driving their automobile off the main traveled portion of 1st Avenue South and in viola-

tion of the restrictive signs requiring traffic to proceed in a single lane and said negligence was a proximate cause of the collision with the Roberts automobile.

Consistent with this instruction, the trial court also instructed the jury that respondent Goerig was liable to passenger Hoadley for any damages he sustained as the proximate result of the accident. Exception was taken to both of these instructions by respondent's counsel.

However, the trial court instructed the jury on the issue of contributory negligence of appellant Roberts as follows:

As to the plaintiff William L. Roberts, the defendants are liable unless the defendants meet their burden of proving plaintiff Roberts was guilty of contributory negligence at the time and place of the accident, in which case they would not be liable.

In connection with the issue of contributory negligence of Roberts, the trial court gave instruction No. 5, which submitted to the jury the question of whether or not Roberts had kept a reasonably careful lookout ahead. The court also, in instruction No. 6, told the jury that it is negligence for a driver to fail to stop or slow his automobile to avoid a collision which he sees, or could see, in the exercise of reasonable care, is likely to occur if he does not stop or slow his automobile.

The trial court refused to give plaintiff's proposed King County uniform instruction on the emergency doctrine. Exceptions were taken to the giving of these instructions by the trial court and its failure to give proposed instructions.

The issue of proximate cause of injuries to both appellants was given to the jury with instructions pertaining to burdens of proof and measure of damages.

Appellants' brief lists 15 formal assignments of error which raise five issues. Two of these issues pertain to the submission of the issue to the jury of the alleged contributory negligence of Roberts. Two issues pertain to the giving of burden of proof and proof of damages instructions. The fifth issue concerns the admissibility of a movie film as evi-

dence and its proper use in this trial. We shall discuss each of these in turn.

The first issue raised pertains to appellant Roberts only. It is his contention that the question of his contributory negligence could not and should not have been submitted to the jury because there is no evidence that he was failing to keep a proper lookout, or that he should have anticipated an accident and failed to avoid it by taking the proper precautions. Roberts had testified that he could not and did not see respondent's car until the front right window of his own car had cleared the line of traffic standing in the southbound center lane of First Avenue South. However, Roberts also testified, on cross-examination, that (1) he was familiar with the intersection, and (2) he had seen cars use the blacktopped outer lane on occasion. Based on the photographs admitted in evidence taken by Mr. Roberts himself, it is obvious that the use of this lane by moving automobiles was a very common occurrence. Mr. Roberts also indicated that he had proceeded across First Avenue South very slowly because he couldn't see around the car which had stopped for him.

The evidence in the record is sufficient to support either of two findings of negligence. The jury may have believed that Roberts should have seen the Goerig car, had he looked carefully, because, normally, one can see through windows of stationary cars and out the other side. It is also possible that the jury believed that when a man knows, as Roberts admitted he knew, that a lane is used (whether legally or illegally) for travel by cars, one should not pull across the lane, even though he may believe that he has the right of way, when he *cannot see* what is coming. Roberts admitted that he could not see what was coming. It appears to this court that there was evidence from which the jury could find contributory negligence on the part of appellant Roberts under the instructions given by the trial court.

Appellant Roberts contends, however, that the possibility of contributory negligence on his part is logically and legally inconsistent with the trial court's instruction that respondent Goerig was negligent as a matter of law in traveling on

the shoulder of the roadway and in failing to yield the right of way to Roberts by coming to a complete stop before trying to enter the intersection with South 156th Street.

■ Respondent Goerig has argued, in response to this second issue, that, as a matter of law, the trial court should have held that he was on the roadway as defined in RCW 46.04.500, and, therefore, not negligent. That statute reads:

> "Roadway" means the paved, improved, or proper driving portion of a public highway designed, or ordinarily used for vehicular travel.

Goerig's contention is that all the testimony shows that he was on the paved, improved portion of the roadway which was ordinarily used for vehicular traffic.

Appellant Roberts argues that vehicles using the black-topped outer lane were violating the law, and that their use of the lane did not make it a roadway, in the face of the facts in the record that show that the state highway department and the state patrol considered this to be a 2-lane thoroughfare, and the blacktopped outer lane to be a shoulder.

The trial court accepted appellant Roberts' viewpoint, but we must disagree with the trial court and appellant Roberts.

First, we would like to point out that RCW 46.04.350 defines a multiple lane highway. It reads:

> "Multiple lane highway" means any public highway the roadway of which is of sufficient width to reasonably accommodate four or more separate lanes of vehicular traffic, two or more lanes in each direction, each lane of which shall be not less than eight feet in width and whether or not such lanes are marked and whether or not the lanes of opposite bound traffic are separated by a neutral zone or other center line marking.

RCW 46.04.260 defines a laned highway as follows:

> "Laned highway" means a highway the roadway of which is divided into clearly marked lanes for vehicular traffic.

Legally speaking, this state has multiple lane highways which are not necessarily "laned" highways. Therefore, the absence of painted lines separating the roadway into

lanes is immaterial in this case. The evidence is undisputed in the record that the center lanes in First Avenue South at the intersection with South 156th Street are at least 10 feet wide, and that the outer lane in which Goerig was traveling is between 10 and 11 feet wide.

We conclude that the width of the paved portion of First Avenue South at the intersection with South 156th Street is sufficient to conform to the statutory definition of a "multiple lane highway." The only question thereafter is whether these were adequate indications to a reasonably prudent driver that this was *not* a multiple lane highway. The absence of any sign after the pavement again widens leaves a driver to decide for himself whether the outer lane is roadway or shoulder. We see nothing in the evidence which would indicate to a reasonably prudent driver that this blacktopped portion immediately north of South 156th Street was not an outer lane. Therefore, although respondent may have been negligent, and the jury might have found him negligent, we do not believe he was negligent as a matter of law simply because he was driving on the blacktopped outer lane. The blacktop, in the absence of signs, looks just like a roadway.

However, the posture of this issue is that appellants have argued that the trial court's ruling is correct, and that it is inconsistent with the submission of the contributory negligence of appellant Roberts to the jury. We believe that the issue of contributory negligence of Roberts was correctly submitted to the jury, and that the two rulings are not necessarily inconsistent. However, if they are inconsistent in any respect, then appellant Roberts received the benefit of this inconsistency in instructions which aided him in his arguments to the jury. Instead of the jury accepting his argument, it rejected it on the basis, apparently, that the conditions were such at that time at the intersection that appellant Roberts should have seen Goerig's car or should not have entered Goerig's lane of travel without being able to see, when he knew that cars use that lane at times.

We conclude, therefore, that there was no prejudicial error in submitting the issue of the contributory negligence of Roberts to the jury. Furthermore, the proposed emergency doctrine instruction for appellant Roberts' benefit was not applicable. He moved into the blacktopped outer lane and helped create the situation he found himself in. We have consistently held that the emergency doctrine is inapplicable in such circumstances.

Appellants Roberts and Hoadley have assigned error to the trial court's instructions Nos. 14 and 15. Instruction No. 14 instructed the jury on the measure of damages to be applied to appellant Hoadley's claim, and instruction No. 15 instructed the jury of the measure of damages to be applied to appellant Roberts' claim. At the end of each instruction was the statement:

> Whether any of these elements of damages has been proved by the evidence is for you to determine. Your verdict must not be based on speculation, guess or conjecture.

Trial court's instruction No. 1 instructed the jury that the burden of proving damages was on appellants. Instruction No. 4, given by the trial court, instructed the jury on the meaning of the term "burden of proof." It is the position of appellants that the statement quoted above from instructions Nos. 14 and 15 was unnecessarily and prejudicially repetitious, and amounted to a comment on the evidence, especially in view of the instructions given in instructions Nos. 1 and 4. Appellants claim that the point about speculation, guess or conjecture was made in connection with no other part of the case, and, therefore, told the jury that the trial court judge believed appellants' evidence proved no damages.

The trial court also gave as its instruction No. 2, the following:

> It is the duty of the court to instruct you as to the law, and it is your duty to follow the law as the court shall state it to you.
>
> You are the exclusive judges of the facts and the weight to be given the testimony of any witness. It is the duty

of the court to refrain from commenting on the evidence and to avoid attempting to influence your independent judgment as to the disputed facts.

. . . .

The order in which the instructions are given has no significance as to their relative importance, and you should not single out any particular instruction, but should consider the instructions as a whole.

■ It is axiomatic that the trial court has considerable discretion in how the instructions will be worded and whether the rules contained in general instructions will be or should be repeated in specific instructions in more detail to guard against a misunderstanding by the jury. We believe that the trial court was within its discretion in the wording of instructions Nos. 14 and 15.

It is also axiomatic that instructions must be read as a whole. If there could possibly have been any misunderstanding of the jury based on overemphasis that amounted to a comment on the evidence, the wording of instruction No. 2 given by the trial court amply protected against this possibility.

We conclude, therefore, that there is no merit in the issue pertaining to the assignments of error to instructions Nos. 14 and 15.

■ Appellants have argued that the trial court erred in failing to give their proposed instructions pertaining to pre-existing conditions and the burden of separating damages not attributable to the accident. These instructions were taken from the cases cited in appellants' brief. The trial court gave its instruction No. 16 on this area of the law. Appellants did not except to instruction No. 16. Appellants have cited no authority to show that they are entitled to other additional instructions. The theory of appellants was that the "defendant takes his victim as he finds him." That theory was amply expounded in instruction No. 16. There was no error in failing to give the instructions proposed by appellants in addition to instruction No. 16.

The foregoing discussion covers appellants' assignments of error based on the trial court's giving or refusing to give certain instructions.

The remaining significant issue pertains to assignments of error with regard to the admission in evidence, over appellants' objection, a movie film strip of the intersection of First Avenue South with South 156th Street. The film was taken between 4:30 and 5 p.m. on March 27, 1964, which was about a year and a half after the accident occurred. The introduction of this movie film strip is assigned as error on the ground that it is not material or relevant since it was taken long after the accident, and it does not show the same traffic conditions. After the film was shown to the jury, appellants' counsel was denied his motion to have it rerun for the jury so that he could comment on certain aspects of the film which he considered unfavorable to respondent and favorable to appellants. The denial of the rerun is also assigned as error.

 The admissibility of such a film and the number of times it should be shown are within the sound discretion of the trial court.

We have read the record carefully in connection with these two assignments and we have viewed the film. It may be true that the traffic flow is more rapid, and that traffic is less congested in the film than at the time the accident occurred about a year and a half before. However, we fail to see anything inadmissible or prejudicial about the film. It simply shows that the blacktopped lane is used as a roadway at that time of day by some drivers. Its effect is no different in our minds than the still photographs introduced by appellants which had been taken by appellant Roberts the day following the accident. These exhibits and still photographs submitted by respondent showed the same facts and were admitted without objection of appellants. We think that there was no abuse of discretion by the trial court in admitting the movie film or in denying the motion for a rerun.

The other formal assignments of error relate to the trial court's entering judgment on the verdicts, and thereafter denying appellants' motion for a new trial based on the assignments of error already discussed. We find these to be without merit based on the foregoing discussion.

The judgment of the trial court is found to be not in error in any respect claimed by appellants, and it, therefore, is hereby affirmed.

ROSELLINI, C. J., FINLEY and HAMILTON, JJ., and BARNETT, J. Pro Tem., concur.

June 22, 1966. Petition for rehearing denied.