[No. 27170-9-I.   Division One.   July 1, 1991.]

GARY A. WHITE, ET AL, *Appellants*, v. JAMES M. SOLAEGUI, ET AL, *Respondents*.

*Lauren D. Studebaker* and *Thomas, Whittington, Anderson & Bergan,* for appellants.

*Suzanne Kelly Michael, Charles C. Huber,* and *Lane Powell Spears Lubersky,* for respondents.

COLEMAN, J. — Gary White appeals the trial court's grant of summary judgment to James Solaegui, asserting that a triable issue of fact existed about the proximate cause of the car accident in which the two men were involved. We affirm.

The accident involved in this case occurred in Everett, Washington, near the intersection of Casino Road and Evergreen Way. At that intersection, Casino Road has four distinct traffic lanes separated by white dividing lines: an eastbound through lane; a 2-way turn lane; a westbound through lane; and a westbound, right-turn-only lane leading onto northbound Evergreen Way. The designated right-turn-only lane is 20 feet 6 inches wide. A 7-Eleven store sits 124 feet north and east of the intersection, with its driveway leading off of Casino Road. The white line dividing the westbound through lane and the westbound right-turn-only lane stops approximately 60 feet west of the 7-Eleven driveway, although the width of the westbound portion of the road is identical to its width near the intersection. In addition, a right-turn arrow is painted on the pavement near the intersection, and at

approximately 30 feet west of the 7-Eleven driveway the faded word "Only" appears on the road.

On August 12, 1988, at approximately 4:45 p.m., Gary White was driving east in his pickup truck on Casino Road. After crossing over Evergreen Way, White entered the 2-way traffic lane in order to make a left-hand turn into the parking lot of the 7-Eleven store. At that time, westbound traffic on Casino Road was stopped at a red light at the intersection, with the line of cars extending east beyond the 7-Eleven parking lot.

A westbound driver who was stopped at the red light backed up slightly so that White could make the left turn across the westbound lane of cars and into the parking lot. At the same time, James Solaegui was traveling westbound on Casino Road to the right of the line of cars stopped by the light in the westbound through lane. Solaegui was intending to make a right-hand turn onto northbound Evergreen Way at the intersection. As White proceeded to turn left toward the 7-Eleven lot, the vehicles driven by White and Solaegui collided. White later sued Solaegui for personal injuries, alleging that Solaegui was negligent and had proximately caused White's damages.

After filing an answer and counterclaim, Solaegui moved for summary judgment, asserting that no material issues of fact existed and, as a matter of law, he had been driving lawfully in a legal lane for westbound traffic making right turns into the 7-Eleven parking lot or onto northbound Evergreen Way. In his supporting memorandum, Solaegui argued that the sole cause of the accident was White's negligence in failing to yield the right of way as he was required to do pursuant to RCW 46.61.185 while making a left turn.[1]

---

[1] RCW 46.61.185 provides:

"**Vehicle turning left.** The driver of a vehicle intending to turn to the left within an intersection or into an alley, private road, or driveway shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard."

In addition, Solaegui asserted that he was driving in a lawful manner at all times and that White failed to meet his burden of proving that Solaegui had been negligent. According to Solaegui, two legal westbound lanes existed on Casino Road at the point of the accident or, in the alternative, the westbound portion of Casino Road was sufficiently wide to accommodate two lanes of traffic as authorized by RCW 46.61.115(1)(b).

> The driver of a vehicle may overtake and pass upon the right of another vehicle only under the following conditions:
>
> . . . .
>
> (b) Upon a roadway with unobstructed pavement of sufficient width for two or more lines of vehicles moving lawfully in the direction being traveled by the overtaking vehicle.

J.I. Mason, an accident reconstruction specialist, presented a declaration to the court on behalf of Solaegui in which Mason averred that "[t]here is ample room for two lanes of cars to travel safely westbound on Casino Road." In addition, Mason observed that

> it is quite common for two lanes of traffic to form on this roadway well prior to the "Right Turn Only" sign [and in] fact, cars traveling westbound on Casino Road utilize this right-hand lane of travel to both enter and exit the 7-11 store, as well as to enter the right-hand turn lane to turn right onto Evergreen Way.

Photographs attached to Mason's declaration depict cars using the far right section of the road as a lane for entering and exiting the 7-Eleven parking lot and in preparation for making a right turn onto northbound Evergreen Way.

White opposed Solaegui's motion for summary judgment, asserting that Solaegui was "proceeding unlawfully in a place where no lane of traffic could properly form and in a place where Mr. White had a right to believe he would not encounter a vehicle." To support his assertion that an issue existed for the trier of fact, White relied upon the affidavit of Kenneth Cottingham, a professional traffic engineer, who opined that only one legal westbound lane of traffic existed on Casino Road. Cottingham based his conclusion upon his reading of the Manual on Uniform

Traffic Control Devices for Streets and Highways and specifically declared that

> there was only one legal westbound lane other than the two way left turn lane because two lanes were not marked as required by the Manual of Uniform Traffic Control Devices, Section 3B-2 which has been adopted as the standard by the State of Washington. Further, in [my] opinion the designer of the roadway did not desire to have more than a single westbound lane because of the lane marking, and because good design practices would preclude two lanes at the driveway entrance to the 7-Eleven parking facility. The fact that the lane width is wider than necessary to accommodate one lane of traffic does not give a motorist the freedom to force his vehicle into a space adjacent to a vehicle within the lane and claim that he has "a lane".
>
> 7. In [my] opinion, a motorist cannot lawfully pass on the right where no proper lane designation permits this. This would be so regardless of driver practices which may or may not comply with legal requirements.
>
> 8. In [my] opinion, regardless of the degree of fault which may be attributed to Plaintiff, if any, the Defendant driver was negligent in forming a lane to the right and passing traffic where no proper lane has been designated. In such event the offending motorist is taking a chance that a left turning vehicle will not be aware that he is proceeding improperly.

White concluded that a factual issue existed as to whether Solaegui was "moving lawfully" pursuant to RCW 46.61-.115 when he traveled to the right of the westbound through lane. The trial court granted Solaegui's motion for summary judgment, and White now appeals.

■ In reviewing an appeal from summary judgment, an appellate court "places itself in the position of the trial court and considers the facts in a light most favorable to the nonmoving party." *Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 226, 770 P.2d 182 (1989). Summary judgment is properly granted when the nonmoving party fails to offer any evidence opposing the motion. *Turner v. Kohler*, 54 Wn. App. 688, 692, 775 P.2d 474 (1989). The nonmoving party

> may not rely on speculation, argumentative assertions that unresolved factual issues remain, or on affidavits considered at face value. After the moving party submits adequate affidavits, the nonmoving party must set forth specific facts

which sufficiently rebut the moving party's contentions and disclose the existence of a genuine issue as to a material fact. Issues of material fact cannot be raised by merely claiming contrary facts.

(Citations omitted.) *Meyer v. UW*, 105 Wn.2d 847, 852, 719 P.2d 98 (1986). Further, "[c]onclusions of law stated in an affidavit filed in a summary judgment proceeding are improper and should be disregarded." *Hash v. Children's Orthopedic Hosp. & Med. Ctr.*, 49 Wn. App. 130, 133, 741 P.2d 584 (1987), *aff'd*, 110 Wn.2d 912, 757 P.2d 507 (1988).

White argues, as he did before the trial court, that only three lanes existed on Casino Road at the point of the accident and Solaegui had been driving on part of the road that was not designated as a "lane" when the accident occurred. White asserts that it is necessary to construe the phrase "moving lawfully" in RCW 46.61.115 in light of RCW 46.61.140.[2]

■ However, RCW 46.61.140 has no relevance to the interpretation of RCW 46.61.115 or to the facts of this

---

[2]RCW 46.61.140 provides:

"**Driving on roadways laned for traffic.** Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply:

"(1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

"(2) Upon a roadway which is divided into three lanes and provides for two-way movement of traffic, a vehicle shall not be driven in the center lane except when overtaking and passing another vehicle traveling in the same direction when such center lane is clear of traffic within a safe distance, or in preparation for making a left turn or where such center lane is at the time allocated exclusively to traffic moving in the same direction that the vehicle is proceeding and such allocation is designated by official traffic-control devices.

"(3) Official traffic-control devices may be erected directing slow moving or other specified traffic to use a designated lane or designating those lanes to be used by traffic moving in a particular direction regardless of the center of the roadway and drivers of vehicles shall obey the directions of every such device.

"(4) Official traffic-control devices may be installed prohibiting the changing of lanes on sections of roadway and drivers of vehicles shall obey the directions of every such device."

case. More to the point is RCW 46.04.350, which defines a "multiple lane highway" as

> any highway the roadway[3] of which is of sufficient width to reasonably accommodate two or more separate lanes of vehicular traffic in the same direction, each lane of which shall be not less than the maximum legal vehicle width and *whether or not such lanes are marked.*

(Italics ours.) Thus, a lane may be legally recognized even if it is on a roadway whose pavement is not marked with a dividing line.

RCW 46.04.260, which defines a "laned highway" as "a highway the roadway of which is divided into clearly marked lanes for vehicular traffic", does not require a contrary conclusion as White suggests in his reply brief. As noted by the Supreme Court, Washington has multiple lane highways that are not necessarily "laned" highways. *Roberts v. Goerig,* 68 Wn.2d 442, 452, 413 P.2d 626 (1966). The facts of *Roberts* are similar to the present case in that a driver traveling on an unmarked portion of a highway collided with another driver crossing through an intersection. The court found that the unmarked portion of the road was sufficiently wide to meet the definition of a "multiple lane highway" and concluded that the party driving on that unmarked portion of the road was not negligent as a matter of law. *Roberts,* at 452-53. As the court noted, "[t]he blacktop, in the absence of signs, looks just like a roadway." *Roberts,* at 453. The facts in the present case call for the same conclusion. Consequently, so long as the width of the roadway could accommodate two or more separate lanes of traffic — an undisputed fact in the present case — RCW 46.04.350 and RCW 46.61-.115(1)(b) support the conclusion that Solaegui was driving in a legal lane at the time of the accident.

---

[3]A "roadway" is defined as "that portion of a highway improved, designed, or ordinarily used for vehicular travel, exclusive of the sidewalk or shoulder even though such sidewalk or shoulder is used by persons riding bicycles. . . ." RCW 46.04.500. (White does not claim that Solaegui was driving on the shoulder of Casino Road.)

Cottingham's affidavit is insufficient to create a genuine issue of fact which would preclude summary judgment. First, his assertion in his affidavit that only three lanes exist on Casino Road contradicts the plain meaning of RCW 46.04.350. Further, the provisions which Cottingham relies upon in the Manual on Uniform Traffic Control Devices for Streets and Highways (adopted by the state Secretary of Transportation via WAC 468-95-010) do not require that all lanes on a roadway be identified by a white dividing line. According to that manual, lane lines are only mandatory for interstate highways. Also, Cottingham draws a legal conclusion that Solaegui was negligent by driving to the right of the westbound through lane. Legal conclusions presented in an affidavit are improper and should be disregarded. *Hash*, at 133; *Charlton v. Day Island Marina, Inc.*, 46 Wn. App. 784, 788, 732 P.2d 1008 (1987).

Because there was no evidence that would support an inference of negligence on the part of Solaegui, the trial court properly granted summary judgment and is affirmed.

FORREST and AGID, JJ., concur.

Review denied at 117 Wn.2d 1019 (1991).