[No. 36105. Department One. March 29, 1962.]

NINA G. ROSSITER, *Appellant*, v. LEO MOORE, *Respondent*.*

* Reported in 370 P. (2d) 250.

 

*Sharp & Bishop* (*McCarthy & Adams,* of counsel), for appellant.

*S. Dean Arnold* (*Clements & Clements,* of counsel), for respondent.

FOSTER, J.—Appellant, plaintiff below, appeals from a summary judgment for the respondent, defendant below, in a personal injury action. The long and the short of the matter is that such judgment must be reversed because the factual showing fails to demonstrate the absence of a genuine controversy on material issues.

Appellant was a social guest at the home of respondent's tenant, Edmund Carey, on February 16, 1960, on which occasion she fell from the back porch. The residence, owned by respondent Moore, was orally rented to Carey on a month-to-month tenancy beginning December 5, 1959. Before Carey moved into the house, respondent Moore gratuitously removed the iron railing from the back porch and said that he would store it at his own home until his tenant had completely moved in. It is inferable that the railing was designed as a permanent fixture although it could be removed and replaced at will "so as to enable the tenants to move their furniture from the carport and into the house through the back door."

This was appellant's first visit to the Carey home, and she was completely unfamiliar with its condition. Upon leaving the house, she fell from the back porch, which fall is attributed to the absence of the railing.

 While it conclusively appears that there was no written lease, and that Carey's tenancy was pursuant to an oral agreement, the showing, both in support of and in opposition to the motion for summary judgment, does not touch the existence or nonexistence of any oral agreement

concerning the removal of the railing or its replacement. The record is completely silent. An oral agreement to repair is just as valid as a written one.[1]

The burden is upon the party moving for summary judgment to show that there is no genuine dispute of a material fact, and this burden cannot be shifted to the adversary. Professor James William Moore, 6 Moore's Federal Practice 2123, ¶ 56.15[3], says:

"The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to judgment as a matter of law. . . ."

Accord: Professor Charles Alan Wright's revision of 3 Barron & Holtzoff, Federal Practice & Procedure (Rules ed.) 138, § 1235; *Preston v. Duncan*, 55 Wn. (2d) 678, 349 P. (2d) 605.

The granting of the summary judgment when there is absolutely no showing that there either was or was not an oral agreement to replace the railing cannot stand. It completely ignores the sole function of the modern device.

While we are considering only the claimed error in the entry of summary judgment, and not a motion to dismiss for failure to state a claim upon which relief can be granted, nevertheless, it should be remembered that it is no longer necessary to plead the facts constituting a "cause of action." This term has disappeared from our jurisprudence. It is sufficient if the complaint contains a short and plain statement of the claim showing that the pleader is entitled to relief and a demand therefor. A motion to dismiss for failure to state a claim can be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Sherwood v. Moxee School Dist. No. 90*, 58 Wn. (2d) 351, 363 P. (2d) 138.

Summary judgment was entered because there was no

---

[1] *Rowland & Sons v. Bock*, 150 S. C. 490, 148 S. E. 549; *Stapp v. Madera Canal & Irr. Co.*, 34 Cal. App. 41, 166 Pac. 823; *Good v. Von Hemert*, 114 Minn. 393, 131 N. W. 466; *Gary v. Spitler*, 10 Tenn. App. 34.

written contract to replace the railing and, in the absence of a covenant to repair, the landlord was not liable to the tenant or his guest for a condition which existed at the beginning of the tenancy.

■ But this overlooks the controlling principle that, independent of the law of landlord and tenant, a landlord is liable to his tenant or the tenant's guest for his affirmative acts of negligence. The rights and liabilities of the parties under the law of landlord and tenant and negligence are not mutually exclusive. Dean Bohlen explains it as follows:

"The liability for negligence in performing a gratuitous undertaking is not contractual or even consensual but is essentially a Tort liability. . . .

". . . No man is bound to aid or benefit another, in the absence of some peculiar relationship or an express agreement given upon a sufficient consideration. Therefore mere inaction cannot create liability, but liability for the consequence of action is a very different matter. If a man chooses to act, he must so act as not to create an undue risk of injury to others. If he consciously interjects himself into the affairs of others, he must take care that his interference shall not unduly endanger them, and while he is not bound to protect or benefit his neighbor, he must not so act as to change his position for the worse. The person voluntarily and gratuitously making repairs upon another's premises, whether as landlord or in any other capacity, whether the premises are occupied by his tenant or by an owner, is therefore bound to take reasonable care therein, so that his act may not endanger those whom he should expect to use the premises, and if he creates a danger and that danger results in injury, he is liable therefor." 35 Harv. L. Rev. 633, 650, 651.

Again, the matter is brought into very sharp focus by the Supreme Court of Oregon in *Senner v. Danewolf*, 139 Ore. 93, 293 Pac. 599, 6 P. (2d) 240. It stated the problem in the following paragraph:

"The real question presented by the record in this case is: Is the landlord liable to the guests or invitees of his tenants upon the demised premises by reason of a dangerous condition of the premises which existed at the time of leas-

ing and of which both landlord and tenant had knowledge, but of which the injured guest or invitee was ignorant?"

It stated the applicable rule of law as follows:

"Reasonable minds will agree that the construction of the pavement between the driveway and the building would lead one to believe that it was intended for a sidewalk. It was an invitation to anyone using the side door as an exit to turn either to the right or left. That must have been the purpose of constructing steps. One would not likely step over a curb fourteen and one-half inches high when there were ordinary steps leading in either direction. If one's objective were the garages, he would naturally turn to the right and up the two steps. If his objective was to reach Failing street, just as naturally would he turn to the left and proceed in that direction using the four-inch step. When he stepped up the four-inch step, there was still a ten-inch curb dividing the paved space from the driveway. One would not be likely to step over a ten-inch curb to walk in a driveway manifestly constructed for the use of automobiles and just wide enough for the purpose intended.

"The dangerous condition of the walk and open stairway existed at the time the premises were let and was brought about and entirely produced by the landlord, and he remains liable for injury to third persons, lawfully on the premises, by reason of the dangerous condition which he created, notwithstanding the leasing: *Bailey et al. v. Kelly,* 86 Kan. 911 (122 P. 1027, 39 L. R. A. (N. S.) 378); *Larson v. Calder's Park Co.,* 54 Utah 325 (180 P. 599, 4 A. L. R. 731). The law is well and succinctly stated in:

" 'Therefore, if any responsibility in this case attaches to the defendant, it can not be based upon any contract obligation, but must rest entirely upon its *delictum.* If a landlord lets premises and agrees to keep them in repair, and he fails to do so, in consequence of which any one lawfully upon the premises suffers injury, he is responsible for his own negligence to the party injured. * * * If he creates a nuisance upon his premises, and then demises them, he remains liable for the consequences of the nuisance as the creator thereof, and his tenant is also liable for the continuance of the same nuisance. * * * And there is no distinction stated in any authority between cases of a demise of dwelling houses and of buildings to be used for business purposes. The responsibility of the landlord is the same in all cases. If guilty of negligence or other *delictum* which leads directly to the accident and wrong complained of, he

is liable; if not so guilty, no liability attaches to him.' *Edwards v. N.Y. & H.R.R. Co.*, 98 N. Y. 245 (50 Am. Rep. 659); *Copley v. Balle*, 9 Kan. App. 465 (60 P. 656); See note to *Griffin v. Jackson Light Etc. Co.*, 92 Am. St. Rep. 499.

" 'There is a wide distinction between acts lawful in themselves, done by one upon his own premises, which *may* result in injury to another if not properly done or guarded, and those which in the nature of things *must* so result. In the former case a party could only be made liable for actual negligence in the performance of the act or mode of maintaining it, while in the later case he would be liable for all the consequences of his acts, whether guilty of negligence or not. The one act only becomes a nuisance by reason of the negligent manner by which it is performed or maintained, while the other is a nuisance *per se*.' Wood's Law of Nuisances (2d Ed.), 141.

"In the instant case it is admitted that the landlord had full knowledge of the condition of the premises at the time of leasing."

This is in accord with our own decisions: *Greetan v. Solomon*, 47 Wn. (2d) 354, 287 P. (2d) 721; *McCourtie v. Bayton*, 159 Wash. 418, 294 Pac. 238. *Cf. Marks v. Nambil Realty Co.*, 245 N. Y. 256, 157 N. E. 129.

■ The trier of the fact may be justified in finding that the railing was a permanent improvement. An "appurtenance" has been defined:

"An *appurtenance* is:

" 'That which belongs to something else; . . . something annexed to another thing more worthy; in common parlance and legal acceptation, something belonging to another thing as principal and passing as incident to it . . .' " *Smith v. Harris*, 181 Kan. 237, 311 P. (2d) 325.

If the railing was a permanent improvement, it passed to the tenant.

" . . . The general rule is that appurtenances reasonably essential to the enjoyment of demised premises pass as an incident to them unless specially reserved. . . ." *Fabrycky, Inc. v. Nad Realty Corp.*, 261 App. Div. 268, 269, 25 N. Y. S. (2d) 347.

The trier of the fact may conclude that the removal of the railing by the respondent implied an obligation to replace it after completion of the moving.

728

"The lease makes no reference to the right to place any signs upon the building, however, certain implied rights may be involved in a lease of this nature. In many instances the law gives, by implication, certain rights in connection with the use and enjoyment of the premises unless express reservation is made by the landlord in this respect.

" . . .

" 'The term "appurtenances" in a lease includes incorporeal easements, rights, and privileges, although not land, and gives to a tenant what ever is attached to, and used with, the premises as incident thereto and convenient or essential to the beneficiary's use or enjoyment thereof . . .' . . ." *Lambros Metals v. Tannous*, 71 Ariz. 53, 57, 58, 223 P. (2d) 570, 20 A. L. R. (2d) 933.

The trial court erred in entering the summary judgment.

Reversed.

HILL, WEAVER, ROSELLINI, and OTT, JJ., concur.