[No. 39997.    Department Two.    August 14, 1969.]

MICHAEL D. REGAN et al., *Appellants*, v. THE CITY OF SEATTLE, *Respondent.*[*]

[*]Reported in 458 P.2d 12.

*Victor V. Hoff* (of *Young & Hoff*), for appellants.

*John G. Bergmann* (of *Roberts, Fetty, Olwell, Hamack & Bergmann*), for respondent.

NEILL, J.—Plaintiffs[1] appeal from a summary judgment dismissing their action against the city of Seattle for injuries sustained by plaintiff Michael D. Regan during a "go-cart"[2] race in the Seattle Center Coliseum.

The city of Seattle leased the Seattle Center Coliseum to Thunder Hill, Inc., (also a defendant in this action) for the evening of January 9, 1965, to be used for the purpose of

---

[1]Plaintiff Joseph D. Regan is the father of Michael D. Regan. The injury to Michael was sustained while he was a minor, but he was of full age at the time of the commencement of this action. All references herein to plaintiff are to Michael D. Regan.

[2]A "go-cart" is a very small gasoline powered vehicle consisting mainly of a frame, four wheels, power plant and operator's seat.

holding a racing jamboree for miniature vehicles. The lessee covenanted to keep the premises clean and generally cared for during the term, and to abide by and conform to all rules prescribed by the city for the management of the premises. The lessee also agreed to prevent damage to the premises by providing shock absorbing crash barriers. The lease was subject to the conditions that the building would be at all times under the charge and control of the Superintendent of Buildings of the city, that he or his representative had a right to enter the building at any time, and that any matter not provided for in the lease would be left to his discretion.

Although Thunder Hill, Inc., leased the premises, most of the organizational matters involved in putting on the jamboree were left to various racing associations. The races were held on the floor of the Coliseum around the perimeter of the area used for ice hockey games. The course was a regular oval, with hay bales stacked around the edges of the curves to act as crash barriers. The floor level bleachers were "telescoped" and stacked back from the straightaway beneath the raised spectator seating area. Plaintiff was injured after he had completed several laps of his race. His "go-cart" went out of control on a curve and veered off the straightaway into the stacked floor bleachers.

Plaintiffs' complaint alleged negligent design, construction and maintenance of the "crash wall" around the course, and negligence in the operation and supervision of the race. Depositions and interrogatories were submitted to the court. The city of Seattle moved for a summary judgment. This motion was granted and the action against the city was dismissed with prejudice. Plaintiffs assign error to the granting of the motion and dismissal.

■ The purpose of summary judgment is to avoid a useless trial. If a genuine issue as to any material fact exists, a trial is not useless and such a motion should not be granted. The burden is on the moving party (in this case the city) to establish the absence of any genuine issue of material fact. *See Hughes v. Chehalis School Dist. 302, 61*

504

Wn.2d 222, 377 P.2d 642 (1963); *Jolly v. Fossum,* 59 Wn.2d 20, 365 P.2d 780 (1961).

██ A general rule of landlord-tenant law is that, absent an agreement to repair by the lessor, the lessee takes the property subject to all apparent defects; and, with some exceptions, the lessor is not liable for injuries caused by apparent defects after exclusive control of the property has passed to the lessee. *See Hughes v. Chehalis School Dist. 302, supra;* Annot., 17 A.L.R.3d 422 (1968); Annot., 17 A.L.R.3d 878 (1968). *Cf., Fletcher v. Sunel,* 19 Wn.2d 596, 143 P.2d 538 (1943). We have heretofore held that a lessor owes no greater duty to invitees, guests or sublessees of his tenant than he does to the tenant himself. *McCourtie v. Bayton,* 159 Wash. 418, 294 P. 238 (1930).

██ However, before these rules apply, it must be established that a landlord-tenant relationship exists. The critical question in determining the existence of this relationship is whether exclusive control of the premises has passed to the tenant. *See Lamken v. Miller,* 181 Wash. 544, 44 P.2d 190 (1935); *Barnett v. Lincoln,* 162 Wash. 613, 299 P. 392 (1931). If this control has passed, even though the use is restricted by limitations or reservations, then a landlord-tenant relationship is established. *Barnett v. Lincoln, supra.* From our review of the record, we are satisfied that no genuine issue of fact is presented as to whether this control was passed. Thunder Hill, Inc., was granted sufficient control, at least to that portion of the premises in which plaintiff was injured, to give rise to a landlord-tenant relationship.

██ Given this relationship, there is still a well recognized exception to the general rule that a landlord is not liable for injuries to the guests of his tenant. If a landlord, with actual or constructive knowledge of a defect in his premises, leases these premises for a purpose involving the admission of the public then he is subject to liability for injuries to the public caused by this defect. *See* Restatement of Torts § 359 (1934); Prosser, Torts 415-18 (3d ed. 1964); Annot., 17 A.L.R.3d 873 (1968); *cf., Greene v. Seattle Athletic Club,* 60 Wash. 300, 111 P. 157 (1910). Plaintiffs

urge that this case falls within the public use exception. However, liability under this exception only extends to injuries suffered by members of the public and which occur in that portion of the premises intended to be open to the public. *See* Restatement of Torts § 359, comments a and b (1934); Prosser, Torts 418 (3d ed. 1964); Annot., 17 A.L.R.3d 873, 890, 894 (1968), and cases cited therein. We hold that this exception does not apply to a participant in a race who was injured on the race course and not in any area thrown open to members of the public.

■ Plaintiffs also contend that, irrespective of the landlord-tenant relationship, the city is liable for its active negligence. If a landlord negligently attempts to repair or is otherwise guilty of affirmative negligence on the premises he will not be excused from liability by virtue of the landlord-tenant relationship. *Rossiter v. Moore*, 59 Wn.2d 722, 370 P.2d 250 (1962). *See* Annot., 17 A.L.R.3d 422, 444-46 (1968); Prosser, Torts 423-25 (3d ed. 1964). The rationale behind liability for affirmative acts of negligence was reviewed in *Rossiter v. Moore, supra,* at 725:

> [I]ndependent of the law of landlord and tenant, a landlord is liable to his tenant or the tenant's guest for his affirmative acts of negligence. The rights and liabilities of the parties under the law of landlord and tenant and negligence are not mutually exclusive. Dean Bohlen explains it as follows:
>
> "The liability for negligence in performing a gratuitous undertaking is not contractual or even consensual but is essentially a Tort liability. . . .
>
> ". . . No man is bound to aid or benefit another, in the absence of some peculiar relationship or an express agreement given upon a sufficient consideration. Therefore mere inaction cannot create liability, but liability for the consequence of action is a very different matter. If a man chooses to act, he must so act as not to create an undue risk of injury to others. If he consciously interjects himself into the affairs of others, he must take care that his interference shall not unduly endanger them, and while he is not bound to protect or benefit his neighbor, he must not so act as to change his position for the worse. The person voluntarily and gratuitously making

repairs upon another's premises, whether as landlord or in any other capacity, whether the premises are occupied by his tenant or by an owner, is therefore bound to take reasonable care therein, so that his act may not endanger those whom he should expect to use the premises, and if he creates a danger and that danger results in injury, he is liable therefor." 35 Harv. L. Rev. 633, 650, 651.

The city contends that the general rule precluding a landlord from liability for injuries occurring after exclusive control of the property has passed to the tenant applies in this case. The undisputed facts, the city argues, clearly establish that all preparations for the race and the management and control of the race course were undertaken by Thunder Hill, Inc., and the various racing associations.

Although these contentions are supported by the provisions of the lease, depositions of plaintiff and officers of Thunder Hill, Inc., indicate that employees of the city were on hand during the placement of the hay bales around the curves before the race, and that they not only aided in the placement of the bales but also exercised some control over where the bales were to be placed and the number of bales to be used. Plaintiff argues that the bales were negligently placed in that they did not extend far enough out of the curves and continue a reasonable distance down the straightaway.

Plaintiffs' interrogatories to Thunder Hill, Inc., also included the following question:

4. Please state the names and addresses of the persons who:

. . .

(c) Were responsible for keeping the race course clean during the evening events.

Thunder Hill, Inc., responded as follows:

(c) What cleaning was to be done was to be done under the direction of the staff of Mr. Johnston and Mr. Slim McGinnis of his staff. [Mr. Johnston was a city employee managing the Coliseum.]

Plaintiff testified in his deposition that he lost control of his "go-cart" because he hit a slick spot in the track; that another vehicle in the race previous to his had sustained damage to its cooling system, dumping water on the course at that spot; that someone attempted to clean up the water from this spot before his race; but that he wasn't sure whether it was water which caused the slick spot, rather than some other substance, such as oil or gasoline.

■ In *Wood v. Seattle*, 57 Wn.2d 469, 473, 358 P.2d 140 (1960), we outlined the proper approach to motions for summary judgment as follows:

> In ruling on a motion for summary judgment, the court must consider the material evidence and all reasonable inferences therefrom most favorably to the nonmovant party and, when so considered, if reasonable men might reach different conclusions, the motion should be denied because a genuine issue as to a material fact is presented.

Viewing the record in the light most favorable to plaintiffs, a reasonable man might reach the conclusion that, irrespective of its lack of duties under the lease, the city voluntarily undertook to set the hay bales and clean the course between races and that its affirmative negligence in so doing caused the injuries to plaintiff Michael Regan.

The city in its answer to plaintiffs' complaint interposed the affirmative defense of volenti non fit injuria. The city now contends that, under any version of the facts before the trial court, the doctrine of volenti would bar plaintiffs' recovery as a matter of law.

■ The defense of "volenti" is available under proper circumstances in an action by an invitee of a tenant against a landlord. In order for the "volenti" doctrine to be applicable, plaintiff must have voluntarily exposed himself to a known and appreciated danger. Whether plaintiff had the requisite knowledge of the danger and voluntarily exposed himself to it is normally a question left to the jury. *Detrick v. Garretson Packing Co.*, 73 Wn.2d 804, 440 P.2d 834 (1968).

Plaintiff testified in his deposition that he had taken practice runs around the course and had observed the posi-

tions of the hay bales and telescoped bleachers. He also testified that he had "spun out" on curves in previous races on other tracks and was conscious of this danger. Perhaps he can be said to have voluntarily exposed himself to the risks resulting from the positions of the hay bales and bleachers, and to the risks of normal "spin outs." He always had the alternative of not participating in the race. However, he also testified that he did not have the opportunity to inspect the course after the alleged water spillage during the previous race. The risk of water on the course, particularly when the track was cleaned after the previous race, was an extraordinary risk not assumed by plaintiff unless he knew or should have known of it. *Cf., Benoit v. Marvin,* 120 Vt. 201, 138 A.2d 312 (1958).

Granting plaintiff every inference, the facts are in dispute as to whether the city undertook to clean the course between races and negligently failed to remove water spilled there. The facts are also in dispute as to whether plaintiff was aware of water remaining on the track and voluntarily exposed himself to this risk.

Since reasonable men might differ as to these material facts, the trial court's granting of the city of Seattle's motion for summary judgment and the court's dismissal of the action against the city are reversed.

HUNTER, C. J., HILL, ROSELLINI, and HALE, JJ., concur.