[No. 3157-1.   Division One.   August 2, 1976.]

ISAAC R. PAGARIGAN, ET AL, *Respondents*, v. PHILLIPS PETROLEUM COMPANY, ET AL, *Appellants*.

*Perkins, Coie, Stone, Olsen & Williams, Richard S. Twiss, Bruce D. Corker, Bogle & Gates,* and *Edward M. Archibald,* for appellants.

*Johnson & Crane* and *Ernest F. Crane,* for respondents.

WILLIAMS, C.J.—Isaac R. Pagarigan brought this action against Phillips Petroleum Company and Rudolph Keierleber for injuries he received when an automobile fell from a hoist in the lubrication room of an automobile service station. A jury awarded Pagarigan $64,300 in damages. Both Phillips and Keierleber appeal.

The controlling facts are not in material dispute, and may be stated as follows: Phillips Petroleum Company is a corporation engaged in the production and sale of petroleum products. On June 22, 1967, Phillips engaged Rudolph Keierleber to operate a service station in the city of Kent. The agreement of the parties was expressed in a written lease of the premises and a written reseller's contract.

Under the terms of these agreements, Phillips leased to Keierleber the real property, pumps, tanks, appliances, tools, and other personal property located in the station at an initial rental of 1.25 cents per gallon of gasoline delivered to the station. Keïerleber agreed to order from Phillips a minimum of 129,600 gallons of gasoline and 900 gallons of Phillips Motor Oil each year.

Keierleber also agreed to keep the station open for business from 7 a.m. to 7 p.m., 6 days a week; to maintain an adequate supply of petroleum products; to provide qualified and neatly dressed attendants to render first-class service to customers; to maintain the premises in a clean condition, including the restrooms, lawns, shrubs, and driveways; to use pumps and containers which bore Phillips' identification marks for handling Phillips' products; to keep the side-

walks and drives unobstructed; and to repair equipment and fixtures. Keierleber agreed not to paint or alter the premises or attach any sign or advertisement or to remove equipment without Phillips' prior written consent.

Phillips reserved the right to cancel the lease and reseller's agreement if Keierleber did not correct defaults in any of the terms of either agreement within 10 days of written notice. Phillips also retained the right to demolish and rebuild the station.

On March 18, 1972, Pagarigan called at the station to see if a car radio he had left there for repair was ready. There was no one in the service or office portion of the station so he went into the lubrication room where Keierleber was working. Keierleber told Pagarigan that they would talk when he finished up. While Pagarigan waited, an automobile fell from a hoist, injuring him.

█ Phillips contends the evidence is insufficient to prove that it is liable as a landlord, or that it is responsible as a principal under the theory that Keierleber was its agent. As to the first theory, the rule is that

> If a landlord, with actual or constructive knowledge of a defect in his premises, leases these premises for a purpose involving the admission of the public then he is subject to liability for injuries to the public caused by this defect.

*Regan v. Seattle*, 76 Wn.2d 501, 504, 458 P.2d 12 (1969); *Fitchett v. Buchanan*, 2 Wn. App. 965, 472 P.2d 623 (1970). The reason for this rule

> lies in the lessor's responsibility to the public, which he is not free to shift or delegate to the lessee in any case where he has reason to expect that the lessee will admit the public before the land is put in reasonably safe condition for their reception.

*Fitchett v. Buchanan, supra* at 970.

Phillips argues that the lubrication room had not been thrown open to the public so it was not responsible for what occurred there. *Regan v. Seattle, supra.* We disagree. Phillips could reasonably anticipate customers would enter the lubrication room because the 2-bay service area where

the hoist was located was wide open to the public. Customers bringing their cars for service drove them onto the hoist and Keierleber and his employees frequently discussed service problems with them there while working on a car elevated on the hoist. There is no evidence that the public was prohibited from entering the lubrication room. There is sufficient evidence to support a reasonable belief by the jury that Pagarigan was properly in the lubrication room for a business purpose.

■ Next is the question of whether Phillips is responsible as a principal for the negligence of Keierleber. The law is that

> The negligence of the agent is imputed to the principal, because he has the right to control the acts of the agent. It is the existence of the right of control, not its exercise, that is decisive.

*Poutre v. Saunders*, 19 Wn.2d 561, 565, 143 P.2d 554 (1943).

The jury was justified in finding that Phillips had this right of control. The terms of the lease and reseller's agreement are not confined to the preservation of the real property and care of the equipment; they are directed to the operation of the station and the business of selling Phillips petroleum products. In addition, the record demonstrates that Phillips actually did oversee the station through direct inspection and supervision under the sanction of termination on 10-days' notice.

■ Phillips contends the following language in the lease:

> The provisions of this lease shall not be construed as reserving to the Lessor any right to exercise any control over the business or operations of the Lessee . . . or to direct in any respect the manner in which any such business and operation shall be conducted.
>
> Lessee shall have no authority to employ any person as agent or employee for or on behalf of the Lessor . . .

(Exhibit 1.) and this provision in the reseller's contract

> It is the spirit and intent of this contract that Buyer will have the right to conduct and carry on hereunder the business of selling at retail, automobile fuel and gaso-

line in the manner contemplated by the express terms hereof, wholly free and independent of any dominion or control by Seller; and nothing herein is intended or shall be construed to give Seller any dominion or control of Buyer's said business, except for the purposes and to the extent provided by the express terms hereof.

(Exhibit 2.) prevent its right to control the station operation. The relationship of the parties as amplified by the agreements, the nature of the undertaking itself, and the amount of control actually exercised in the performance of the undertaking are the determinative factors. *Jackson v. Standard Oil Co.*, 8 Wn. App. 83, 505 P.2d 139 (1972); *McLean v. St. Regis Paper Co.*, 6 Wn. App. 727, 496 P.2d 571 (1972). There is substantial evidence that Phillips controlled or had the right to control the station operation.

In his appeal, Keierleber contends that Pagarigan became a licensee to whom Keierleber owed only the duty of not willfully or wantonly injuring. Therefore, he argues, the trial court erred in giving an instruction that assumed Pagarigan was a business invitee to whom Keierleber owed the greater duty of exercising ordinary care.

Keierleber proposed no instructions defining the duty owed a licensee or directing the jury to determine whether Pagarigan was a business invitee or licensee. Furthermore, the evidence is that Pagarigan entered the lubrication room on business—his and the service station's. As discussed above, there was no evidence that the lubrication room was closed to him. He did not become a licensee by waiting his turn for service. *Plaisted v. Tangen*, 72 Wn.2d 259, 432 P.2d 647 (1967); *Dotson v. Haddock*, 46 Wn.2d 52, 278 P.2d 338 (1955).

Judgment affirmed.

SWANSON, J., and REVELLE, J. Pro Tem., concur.