[No. 8754–1–I.   Division One.   August 31, 1981.]

ROBERT M. KROSHUS, *Appellant,* v. WILLIAM P. KOURY, ET AL, *Respondents.*

*Burns, Schneiderman & Davis* and *Barry A. Schneiderman,* for appellant.

*Keller, Rohrback, Waldo & Hiscock, Pinckney M. Rohrback, Reed, McClure, Moceri & Thonn, William L. Holder, Bassett, Gemson & Morrison,* and *R. L. Gemson,* for respondents.

RINGOLD, J.—Robert M. Kroshus appeals a summary judgment dismissing his personal injury claim against Texaco, Inc. We conclude that there is no genuine issue of material fact and that Texaco is entitled to a judgment of dismissal as a matter of law. We therefore affirm the trial court.

On October 28, 1977, Mary A. Koury was driving a 1973 Cadillac owned by a person not a party to this action when she collided with a 1969 Volkswagen driven by Robert M. Kroshus. At the time of the accident, Ms. Koury was on her way to make a bank deposit into her husband's Texaco business checking account, an account used solely for the service station business.

After the accident, Kroshus filed a personal injury action

against the Kourys. Texaco was added as a defendant in an amended complaint alleging that at the time of the accident, Ms. Koury was acting within the scope of her duties as an agent for Texaco. Texaco filed its answer to the amended complaint in which it denied Ms. Koury was acting as its agent. Texaco also filed a motion for summary judgment supported by the affidavit of its Seattle Area Resale Marketing Manager, copies of its various contracts with Mr. Koury, and a legal memorandum.

Kroshus opposed the motion for summary judgment with a memorandum and attached exhibits that included portions of the depositions of Mr. Koury and two Texaco representatives, Kenneth Gubsch and Michael Salmon. Kroshus also submitted the affidavit of a former operator of Koury's service station, Lyle Calvert.

Texaco claims that the record submitted to the trial court demonstrated that it maintained a business relationship with Mr. Koury in which he was an independent contractor purchasing Texaco's products for his business. Texaco cites the contracts between the parties as undisputed proof that Ms. Koury was not its agent because there was no agreement to pay wages or commissions and no right for Texaco to control the activities that caused the accident.

Kroshus disputes this interpretation of the record and relies on the following matters that were before the trial court to support his claim that Ms. Koury was an agent subject to Texaco's control at the time of the accident.

1. Texaco required Mr. Koury to attend a training session before allowing him to operate the station. At this training session, Texaco gave Koury a service station bookkeeping guide that recommended making daily deposits of money received.

2. Ms. Koury maintained the station's books and was responsible for making its bank deposits.

3. The lease agreement required Koury to operate the business every day of the year between certain fixed hours and to use the premises solely for the operation of a gaso-

line service station, not for a parking lot, garage, repair shop, or the sale or rental of motor vehicles. He also could not leave the premises unattended for any period over 48 hours. For default of any condition in the lease, Texaco could terminate the lease without notice.

4. A petroleum products sale agreement required Koury to indemnify Texaco for all litigation expenses arising out of incidents involving lead–free gasoline. Koury could not sell non–Texaco gas and could not control the price of petroleum products.

5. Title to the underground gasoline storage tank and the gasoline kept there remained with Texaco until withdrawn from the gasoline pump.

6. Koury was subject to liability on his account for any errors in complying with the requirements for a valid credit card transaction. Such an incident occurred following a complaint by a Texaco customer.

7. Two Texaco area representatives had duties which included checking the service station to make sure that the terms of the various agreements were being followed. The Texaco representatives would make certain suggestions about the operation of the business designed to increase the sale of Texaco products. Such suggestions were followed by Koury.

8. The relationship with the former operator of the station was terminated before the expiration of his lease because he did not perform as Texaco wished.

9. One Texaco representative removed non–Texaco products from the former owner's shelf, raised the price the station advertised for its gasoline and delivered unordered bags of Texaco fertilizer. Texaco also stopped the former operator's practice of operating a towing business that produced no revenue for Texaco.

The trial court granted Texaco's motion for summary judgment, concluding that Texaco did not have the right to control the employment, driving and banking activities that culminated in the injuries sustained by Kroshus. Kroshus filed a motion to reconsider the grant of summary judgment

and submitted the full depositions of Koury, Salmon and Gubsch and documentary evidence that Texaco was the fifth largest corporation in the United States. The motion to reconsider was denied and this appeal followed.

■■ In ruling on the motion for summary judgment the trial court and this court must consider the facts in the light most favorable to the nonmoving party and decide whether a genuine issue of material fact is presented regarding Texaco's vicarious responsibility for Ms. Koury's negligence. *Balise v. Underwood*, 62 Wn.2d 195, 199, 381 P.2d 966 (1963). Summary judgment should be denied where the facts relevant to agency or independent contractorship are in dispute or are susceptible of more than one interpretation. *Graves v. P.J. Taggares Co.*, 94 Wn.2d 298, 616 P.2d 1223 (1980).

Kroshus contends that an oil company is vicariously liable for the negligent acts of a retail service station operator who is subject to the oil company's general right of control. *Pagarigan v. Phillips Petroleum Co.*, 16 Wn. App. 34, 552 P.2d 1065 (1976); *Massey v. Tube Art Display, Inc.*, 15 Wn. App. 782, 551 P.2d 1387 (1976); *Jackson v. Standard Oil Co.*, 8 Wn. App. 83, 505 P.2d 139 (1972). He argues that there are factual disputes and conflicting inferences from the facts creating a genuine issue on the right of control. *Hollingbery v. Dunn*, 68 Wn.2d 75, 411 P.2d 431 (1966); *Jackson v. Standard Oil Co., supra.* According to Kroshus, Texaco is not just selling oil products to some independent contractor. It retains and exercises the right to control the details of the business activities of its lessee in order to maximize profits. Kroshus cites Texaco's economic power and its contractual right to terminate the relationship at will as evidence that its banking and other "suggestions" are requirements that control the details of the lessee's conduct of the business. *Burriss v. Texaco, Inc.*, 361 F.2d 169 (4th Cir. 1966).

Texaco concedes the existence of its right to control the activities performed at the station itself. In Texaco's view, however, vicarious liability cannot be imposed unless the

specific negligent activity falls within the control of the oil company. *Jackson v. Standard Oil Co., supra.* Without evidence of a right to control the method chosen by the Kourys to conduct their banking activity, Texaco argues it cannot be liable for the negligence of Ms. Koury on the highway.

■ In starting our analysis we point out that the result cannot be determined by resolving the characterization of the relationship between superior and subordinate business parties as one of master and servant or independent contractor or principal and agent. In *McLean v. St. Regis Paper Co.*, 6 Wn. App. 727, 732, 496 P.2d 571 (1972) the court said:

> We thus conclude that the label "employee," or "agent" does not per se create vicarious tort liability. Vicarious tort liability arises only where one engaging another to achieve a result controls or has the right to control the details of the latter's physical movements. *See* Restatement (Second) of Agency § 250 (1958).

In *Massey v. Tube Art Display, Inc., supra* at 786–88, the court thoroughly reviewed the controlling principles of law.

> In determining whether one acting for another is a servant or independent contractor, several factors must be taken into consideration. These are listed in Restatement (Second) of Agency § 220(2) (1958), as follows:
>
> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
>
> (b) whether or not the one employed is engaged in a distinct occupation or business;
>
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
>
> (d) the skill required in the particular occupation;
>
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
>
> (f) the length of time for which the person is employed;
>
> (g) the method of payment, whether by the time or

by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

All of these factors are of varying importance in determining the type of relationship involved and, with the exception of the element of control, not all the elements need be present. *Hollingbery v. Dunn, supra* at 81. It is the right to control another's physical conduct that is the essential and oftentimes decisive factor in establishing vicarious liability whether the person controlled is a servant or a nonservant agent. *McLean v. St. Regis Paper Co., supra; Miles v. Pound Motor Co., supra* [10 Wn.2d 492, 117 P.2d 179 (1941)].

In discussing the actual extent to which the element of control must be exercised, we pointed out in *Jackson v. Standard Oil Co.,* 8 Wn. App. 83, 505 P.2d 139 (1972), that the plaintiff need not show that the principal controlled or had the right to control every aspect of the agent's operation in order to incur vicarious liability. Rather,

[i]t should be sufficient that plaintiff present substantial evidence of . . . control or right of control over those activities from whence the actionable negligence flowed. If the rule were otherwise, then a person wishing to accomplish a certain result through another could declare the other to be an independent contractor generally, and yet retain control over a particularly hazardous part of the undertaking without incurring liability for acts arising out of that part. Such a result would effectively thwart the purpose of the rule of vicarious liability.

*Jackson v. Standard Oil Co., supra* at 91. *See also* Restatement (Second) of Agency § 220(1), comment *d* at 487 (1958). In the recent case of *Baxter v. Morningside, Inc.,* 10 Wn. App. 893, 521 P.2d 946 (1974), we stated at pages 895–96:

In this regard, it may be emphasized that it is not de facto control nor actual exercise of a right to interfere with or direct the work which constitutes the test, but rather, the *right to control* the negligent actor's physical conduct in the performance of the service.

Two cases in this jurisdiction have addressed this issue where vicarious liability was sought against a major oil company. *Pagarigan v. Phillips Petroleum Co., supra; Jackson v. Standard Oil Co., supra.*

In *Pagarigan,* a customer was injured by a car falling off a hoist in a service station lubrication room. There was evidence that the lease and other agreements between Phillips and the dealer were directed at the details of the operation of the station and the business of selling Phillips products, not merely the preservation and care of Phillips property. There was also evidence of a right to directly inspect the dealer's performance of these contracts and to terminate the lease upon 10 days' notice. The appellate court sustained the imposition of vicarious liability against Phillips due to this evidence of the right to control the details of the dealer's business.

In *Jackson,* a welder working for Superior Welding was killed by the explosion of a fuel storage tank that he was repairing at Superior's repair facility. There was evidence that the tank exploded because it had been contaminated with gasoline during a delivery of diesel oil and that this contamination was the result of inadequate safety procedures exercised by an employee of a wholesale petroleum products distributor. Standard Oil had sold the petroleum products to the Washington State Department of Natural Resources through the distributor, and the trial court granted Standard's motion to dismiss at the close of plaintiff's case. This court reversed due to evidence of Standard's right to control the safety procedures used by the distributor and the safety training of the distributor's employees.

We read these cases as instances where the oil company is vicariously liable because of its right to control the particular activity that caused the injury. Texaco argues that regardless of its right to control the activities of the dealer at the service station, it is not vicariously liable here because it had no right to control the dealer's banking activities, employment decisions or driving procedures. This

argument would have no merit if Koury were a salaried employee furthering Texaco's business because the "right of control" is implicit and not discussed in such clear cases. *See Kuehn v. White,* 24 Wn. App. 274, 600 P.2d 679 (1979). Here, however, Koury was in business for himself, and the nature of the relationship was not that of a wage earning servant and a wage paying master. The parties had a lessor–lessee and vendor–vendee relationship that Texaco could terminate only upon default by Koury. While the contracts gave Texaco considerable control over some of the details of Koury's business, we cannot classify Koury as either an independent contractor or servant for all purposes. Under these circumstances, the imposition of vicarious liability is not possible without facts that establish or permit an inference that Texaco had a right to control the particular activities from which the actionable negligence flowed. *Jackson v. Standard Oil Co., supra.* Anticipating the facts of this case, the court in *Jackson* at pages 94–95 mentioned the possibility of not imposing vicarious liability if the dealer's negligent driving is not subject to the alleged master's control.

> Had the loss of life in this case resulted from negligent driving on the highway, or from some other activity [not subject to Standard's right of control or] unrelated to the safe handling of Standard's products, an entirely different result might have been reached on this agency question. Suffice it to say that in this instance plaintiff has adduced substantial evidence that Standard actually controlled the training of personnel engaged in delivery operations and had the right to control the actual delivery *to* the extent of insuring compliance with Standard's safety practices. For this reason, the order of dismissal as to Standard must be reversed and the case remanded for trial.

In this case, Texaco did not have a right to choose Koury's bank and did not have a right to control the means of depositing receipts, the selection of Ms. Koury as the bookkeeper, or her driving habits. There is no evidence or reasonable inference from the evidence that Texaco had a

right to control the activities that caused the injury, and without that crucial factor, there can be no vicarious liability. *Massey v. Tube Art Display, Inc., supra; see Beckham v. Exxon Corp.,* 539 S.W.2d 217 (Tex. Civ. App. 1976).

█ Kroshus argues that Texaco should, nonetheless, be liable as a matter of public policy because its enormous economic power gives it effective control over all its dealer's activities even if Texaco does not have a legal right of control. Our cases in this area accept the premise that economic power ultimately determines right of control, and cases like *Jackson* and *Pagarigan* implicitly acknowledge that a greater economic advantage will create a greater right of control. Kroshus' public policy argument was rejected in *McLean v. St. Regis Paper Co., supra,* and while we believe that justice requires a closer examination of the right of control if the alleged master has enormous economic power, it would be unjust to impose vicarious liability if the power does not create any right to control the activity causing injury to the plaintiff.

The trial court is affirmed.

CALLOW, J., concurs.

WILLIAMS, J. (dissenting)—The majority opinion relies upon a factual determination that Kroshus was in business for himself. I believe that there is evidence from which it reasonably may be inferred that Kroshus was in business for himself and the Texaco Company for the purpose of making money. In the printed documents it furnished (Lease, Agreement of Sale, Rider thereto, Texaco Retailer Travel Card Agreement and two Gasoline Storage and Withdrawal Agreements), the Company established the right to control nearly every aspect of the business. There is a question of material fact whether the handling of the money was of no consequence to the Company in the operation of the station and the business of selling Texaco products. *Pagarigan v. Phillips Petroleum Co.,* 16 Wn. App. 34, 552 P.2d 1065 (1976).

I would reverse and remand for trial.

Reconsideration denied October 5, 1981.

Review denied by Supreme Court January 8, 1982.