[No. 8332-9-II.   Division Two.   February 13, 1987.]

BOBBY CHARLTON, *as Guardian ad Litem,* ET AL,
*Appellants,* v. DAY ISLAND MARINA,
INC., *Respondent.*

*Thomas J. Chambers, Jr.,* for appellants Charlton and MacLean.

*Dwayne A. Richards, Susan A. Schmid,* and *Richards & Kinerk,* for appellant Nelson.

*Timothy R. Gosselin, Steven F. Fitzer,* and *Burgess, Kennedy, Fitzer & Strombom, P.S.,* for respondent.

REED, C.J.—Plaintiffs appeal from a summary judgment dismissing their claims of negligence, strict liability, tort of outrage and vicarious liability. We affirm.

On January 13, 1980, Louis Edwin Nelson and Christine L. Charlton died as a result of carbon monoxide poisoning after being overcome by exhaust fumes from a boat engine running within a boathouse. Plaintiffs are the family members of Christine and Louis and the personal representatives of their estates. The defendant is Day Island Marina, Inc. (Day Island). Also a defendant below, but not a party to this appeal, was Burns International Security Services, Inc. (Burns).

In April of 1979, Louis Nelson and his wife executed a written lease[1] that provided for the moorage of the Nel-

---

[1] Not addressed by the trial court's order, but argued at trial and on appeal is the validity of an exculpatory clause contained in the lease that ostensibly relieves Day Island of liability. The clause is conspicuously titled "Waiver of Responsibility," and states in relevant part that Day Island: "will not be liable or responsible for any personal injuries suffered by owner or his agents, or invitees, arising from any cause upon the boat, Marina's premises, or premises adjacent thereto."

We do not reach a determination of the validity of the exculpatory clause in

sons' 24-foot power boat in one of Day Island's boathouses. The boathouse leased to the Nelsons consisted of a wood frame covered with corrugated sheet metal and fiberglass siding that was floated upon the water and secured at one end to a dock. The boathouse could be entered by foot from the dockside end through a sliding door. The waterside end of the boathouse was completely open, permitting a boat to enter and exit. This entryway could be fitted with a canvas "rear curtain" that, when lowered to the surface of the water, would entirely enclose that end of the boathouse. Day Island did not install these rear curtains, leaving it to the lessee to install such a curtain at its own expense. The Nelson boathouse had been fitted with such a curtain. There were no openings or ventilation features incorporated in the boathouse other than the two doors and continuous openings running the length of the boathouse where the siding was joined.

At approximately 9 or 9:30 on the evening of January 12, 1980, Louis left his home with Christine, his 20-year-old niece, to view the Nelson boat and to recharge its batteries. At approximately 9:30, a Burns security guard hired to patrol the Marina observed exhaust bubbles from the Nelson boat engine in the water at the aft end of the boathouse. The guard did not investigate at that time. Nor did the guard, because of icy conditions on the ramps, adhere to a later-appointed round that would have entailed a check of the Nelson boathouse. When Louis and Christine did not return as expected, Louis's wife went to the Marina to check on them, arriving at approximately 3 on the morning of January 13. The boat engine was still running when she discovered, tragically, Louis and Christine lying unconscious in the boat. Both had been overcome by carbon monoxide as a result of the accumulation of exhaust fumes in the boathouse. Louis was pronounced dead at the scene. Christine was taken to a hospital and died a short

the instant case because we hold that Day Island is not liable, on any of the theories espoused, for the deaths of either Louis or Christine.

time later.

When Louis and Christine were discovered the dockside door to the boathouse was closed or nearly closed and the canvas rear curtain was lowered to approximately 2 or 3 feet above the water. In addition, the cockpit of the boat was almost entirely enclosed by its own canvas covering. Although the stern of the boat was near the entryway and the gap between the water and the rear curtain, the boat was positioned in such a way that the exhaust fumes had risen directly inside the boathouse.

Plaintiffs first put forth a negligence theory, arguing that Day Island is liable for the deaths of Louis and Christine because it failed to furnish the boathouse with ventilation features sufficient to eliminate or minimize the danger of carbon monoxide poisoning.

Before Day Island can be held liable on a negligence theory, it must have breached a duty of care owed to the decedents. *Pedroza v. Bryant,* 101 Wn.2d 226, 228, 677 P.2d 166 (1984). The initial determination of whether such a duty exists is a question of law for the court, keeping in mind that on review of summary judgment the material evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the nonmoving party. *Klinke v. Famous Recipe Fried Chicken, Inc.,* 94 Wn.2d 255, 256–57, 616 P.2d 644 (1980).

Summary judgment is appropriate "if the pleadings, depositions . . . and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). *Del Guzzi Constr. Co. v. Global Northwest, Ltd.,* 105 Wn.2d 878, 882, 719 P.2d 120 (1986); *see Hughes v. Chehalis Sch. Dist. 302,* 61 Wn.2d 222, 224, 377 P.2d 642 (1963).

Here, despite plaintiffs' strenuous arguments that the evidence raised genuine issues of material fact, thus precluding summary judgment, we conclude to the contrary, and that as a matter of law Day Island breached no duty of care owed to decedents. In doing so we disregard

the affidavits of plaintiffs' "experts" who opined that Day Island was negligent, both in design and construction of the boathouse. As noted in *Hiskey v. Seattle*, 44 Wn. App. 110, 113, 720 P.2d 867 (1986):

> while expert testimony is admissible even if it embraces an ultimate issue to be decided by the trier of fact if it will assist the trier of fact to understand the evidence or determine a fact in issue, ER 702 and 704, experts are not to state opinions of law or mixed fact and law, such as whether X was negligent, Comment, ER 704; 5A K. Tegland, Wash. Prac., *Evidence* § 309, at 84 (2d ed. 1982); *Orion Corp. v. State*, 103 Wn.2d 441, 461, 693 P.2d 1369 (1985). An affidavit is to be disregarded to the extent that it contains legal conclusions. *Orion Corp.*, at 461–62; *American Linen Supply Co. v. Nursing Home Bldg. Corp.*, 15 Wn. App. 757, 763, 551 P.2d 1038 (1976); *see* CR 56(e).

We also disregard the experts' opinions that the boathouse was unreasonably dangerous. Although we recognize that expert opinion alone may sometimes create issues of material fact sufficient to prevent summary judgment, *Lamon v. McDonnell Douglas Corp.*, 91 Wn.2d 345, 588 P.2d 1346 (1979); *Orion Corp. v. State*, 103 Wn.2d 441, 461–62, 693 P.2d 1369 (1985), this is not one of those instances. Whether a boathouse was reasonably safe— "within the reasonable expectations of the ordinary consumer"—would be a material issue under a claim of strict liability based upon Restatement (Second) of Torts § 402A (1965). *Lamon*, at 351. However, as we hold later herein, plaintiffs' claim on that theory properly was dismissed. Thus, insofar as plaintiffs' negligence claim is concerned, the expert opinions fail to raise genuine issues of material fact and do not preclude summary judgment.

■ As a landlord, Day Island can be held liable only if the deaths were caused by obscure or latent defects of which it had actual knowledge.[2] *Hughes v. Chehalis Sch.*

---

[2]The parties treat the boathouse lease as creating a landlord–tenant relationship, bringing into play the rules applicable to real property landlord–tenant relationships. Without belaboring the similarities or differences, if any, between leases

*Dist. 302, supra; Peterson v. Betts,* 24 Wn.2d 376, 165 P.2d 95 (1946); *Hogan v. Metropolitan Bldg. Co.,* 120 Wash. 82, 206 P. 959 (1922) (citing cases); *Amburgy v. Golden,* 16 Wn. App. 449, 557 P.2d 9 (1976); Stoebuck, *The Law Between Landlord and Tenant in Washington: Part I,* 49 Wash. L. Rev. 291, 342 (1974).

In *Peterson v. Betts, supra,* a lessee of a building was injured by an explosion after he activated an electrical switch that created a spark within an enclosed space containing an accumulation of gasoline vapor. The lessee sued his landlord on a negligence theory, arguing that the landlord should have provided ventilation adequate to prevent the possible accumulation of gasoline vapors in the enclosed space. In rejecting this argument, the court held that the structural conditions that allowed the gasoline vapors to accumulate and the explosion to occur were not concealed but entirely open and therefore did not constitute a latent danger or defect that would render the landlord liable.

As in *Peterson,* the structural conditions in the instant case that allowed the exhaust gases to accumulate in the boathouse were entirely open and obvious. Thus, even assuming arguendo that the absence of ventilation features other than the two doors and other openings may be considered a defect, such a defect would not be latent or obscure, but obvious or patent and therefore not a basis for liability on the part of Day Island. *Hughes v. Chehalis Sch. Dist. 302, supra; Hogan v. Metropolitan Bldg. Co., supra.* Moreover, *Peterson* recognized that it is a matter of common knowledge that a mixture of gasoline vapor and air is highly explosive in an enclosed space. Similarly, we believe it is common knowledge that the exhaust fumes from an internal combustion engine are toxic, particularly if confined to an enclosed space as in, for example, a garage, or as here, a boathouse. For these reasons, it was not error for the trial court to conclude, as a matter of law, that Day

---

of boathouses and structures clearly built upon the land, we agree with this characterization and decide the issue accordingly.

Island had no duty to provide the ventilation features as contended by plaintiffs. Louis accepted the obvious structural condition of the boathouse when he entered into the lease. Day Island cannot be held liable for the misuse that Louis made of those premises thereafter and his resulting death.[3]

Because Day Island as landlord owes no greater duty to the invitees or guests of Louis than to Louis himself, neither is it liable for the death of Christine. *Regan v. Seattle*, 76 Wn.2d 501, 504, 458 P.2d 12 (1969); *Amburgy v. Golden, supra.* Contrary to plaintiffs' contention, Christine was in the boathouse only as the guest of Louis and as such was not an invitee of Day Island. In any event, Christine's status as an invitee was not argued below and will not be considered for the first time on appeal. *Wilson v. Steinbach*, 98 Wn.2d 434, 440, 656 P.2d 1030 (1982); RAP 2.5(a).

Plaintiffs also contend that Day Island is liable because it committed affirmative acts of negligence, citing *Rossiter v. Moore*, 59 Wn.2d 722, 370 P.2d 250 (1962). In support of this proposition plaintiffs point out that Day Island had installed vents on *other* boathouses in the marina. We fail to see how such actions bring Day Island within the rule of *Rossiter.*[4] Giving plaintiffs the benefit of the doubt, as we must when they oppose summary judgment, the most that can be said of this evidence is that it tends to show actual knowledge of a dangerous condition, *i.e.,* knowledge that unvented boathouses allow the accumulation of exhaust fumes. However, the record belies this. In his uncontradicted affidavit, James Lamb, an employee of Day Island

---

[3]As noted, someone—the record does not indicate who—had installed a canvas rear curtain, which substantially enclosed the large boat entryway on the evening of the deaths of Louis and Christine. Louis had also enclosed the boat itself with a canvas covering, and positioned the boat so that the exhaust arose inside of the boathouse.

[4]In *Rossiter*, the landlord undertook to perform repairs on the leased premises not required of him under the lease, and did so negligently. Here, Day Island made no repairs or alterations on the Nelson boathouse. *Rossiter* clearly is inapposite.

stated:

> At some of the boathouses, at Day Island Marina, I installed turn vents. This was originally done upon the request of one of the boaters, because too much condensation was building up and dripping down onto the boat. The subsequent request [*sic*] for turn vents were made because some people liked the looks of them, and they could be installed at a low cost.

However, as we already have said, if the lack of ventilation presented a danger to those who might choose to operate a combustion engine in the boathouse without taking reasonable precautions, the danger was not a latent defect but one of common knowledge and obvious to the user. *Peterson v. Betts, supra.*

Plaintiffs next contend, based upon Restatement (Second) of Torts § 402A (1965), that Day Island is strictly liable for the deaths of Louis and Christine because it constructed the boathouse.[5] Section 402A liability extends to manufacturers of an unreasonably dangerous and therefore defective product. *Seattle–First Nat'l Bank v. Tabert,* 86 Wn.2d 145, 542 P.2d 774 (1975); *Baughn v. Honda Motor Co.,* 107 Wn.2d 127, 727 P.2d 655 (1986).

We doubt that a boathouse qualifies as a "product" under section 402A, given its similarities to other buildings. See footnote 2. We also doubt that the boathouse would be defective—unreasonably dangerous—as that term is defined for strict liability purposes, *Lamon v. McDonnell Douglas Corp., supra,* in light of our determination that Louis was misusing it on the night in question. However, because plaintiffs have failed to provide us with argument or pertinent authority for the proposition that the boathouse was indeed a product, "[w]e decline to enter this thicket". *Yeats v. Estate of Yeats,* 90 Wn.2d 201, 209, 580 P.2d 617 (1978).[6] It was essential that plaintiffs establish

---

[5]Because the deaths took place prior to July 26, 1981, RCW 7.72, governing product liability actions, does not apply. *See* RCW 4.22.920.

[6]Because the issue of whether the boathouse constitutes a product under sec-

that the boathouse was indeed a product. Not having done so, their strict liability claim properly was dismissed.

The remaining claims of tort of outrage and vicarious liability—the latter based upon the alleged negligence of Burns—also are without merit.

■ To maintain a cause of action for the tort of outrage the conduct complained of must have been outrageous and extreme and the resulting emotional distress intentionally or recklessly inflicted. *Grimsby v. Samson,* 85 Wn.2d 52, 59, 530 P.2d 291, 77 A.L.R. 3d 436 (1975). As our previous discussion demonstrates, plaintiffs have failed to show that Day Island was negligent, much less that it committed any intentional or reckless acts. Their tort of outrage claim was therefore properly dismissed. *Spurrell v. Bloch,* 40 Wn. App. 854, 863, 701 P.2d 529 (1985).

■ Necessary to imposing vicarious liability upon Day Island for any negligent act of Burns is a showing that Day Island had the right to control the particular activities from which the actionable negligence flowed. *Kroshus v. Koury,* 30 Wn. App. 258, 266–67, 633 P.2d 909 (1981). Viewing the facts in the light most favorable to plaintiffs, we conclude that no genuine issue of material fact was presented regarding such liability.

The uncontroverted affidavits, depositions, and exhibits establish that Burns conducted a "security survey" of the premises, formulated a security "program," and submitted a proposal to provide security services to Day Island. Day

---

tion 402A was not adequately briefed, we have not engaged in exhaustive research on the subject. However, after examining cases such as *Bastian v. Wausau Homes Inc.,* 620 F. Supp. 947 (N.D. Ill. 1985), *Begay v. Livingston,* 99 N.M. 359, 658 P.2d 434 (Ct. App. 1981), *Lowrie v. Evanston,* 50 Ill. App. 3d 376, 365 N.E. 2d 923 (1977), and *Cox v. Shaffer,* 223 Pa. Super. 429, 302 A.2d 456 (1973), we doubt that the boathouse so qualifies. Generally, where courts have applied strict liability, the building involved has been either mass produced or found to *contain* a defective product. *See Bastian v. Wausau Homes Inc., supra,* and cases cited therein at 950. *See also* Annot: *Recovery, Under Strict Liability in Tort, for Injury or Damage Caused by Defects in Building or Land,* 25 A.L.R.4th 351 (1983).

Comments *b* and *d* of section 402A tend to negate any intention on the part of its framers to include buildings in its definition of product.

Island was billed monthly for the services provided by Burns. The Burns security guard assigned to patrol the Day Island premises received all of his instructions and supervision from Burns, and Burns only. Indeed, on the night the deaths occurred the guard's supervisor, being concerned for his safety, instructed him not to make his usual inspection. Given these facts, reasonable minds could not differ that Burns had contracted to perform services for Day Island, but was not subject to any right of Day Island to control the physical conduct of Burns in performing the services. *Blodgett v. Olympic Sav. & Loan Ass'n,* 32 Wn. App. 116, 127–28, 646 P.2d 139 (1982); *Kroshus v. Koury, supra.* Because there is no evidence or reasonable inference from the evidence that Day Island had a right to control the conduct of Burns, there can be no vicarious liability and the granting of summary judgment on this claim was proper. *Kroshus v. Koury, supra.*

The judgment is affirmed.

PETRICH and WORSWICK, JJ., concur.

After modification, further reconsideration denied March 9, 1987.