**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| SHANNON C. ADAMSON and NICHOLAS ADAMSON, Husband and Wife, *Plaintiffs-Appellees*, v. PORT OF BELLINGHAM, a Washington Municipal Corporation, *Defendant-Appellant*. | No. 16-35314 D.C. No. 2:14-cv-01804-MJP |
| SHANNON C. ADAMSON and NICHOLAS ADAMSON, Husband and Wife, *Plaintiffs-Appellants*, v. PORT OF BELLINGHAM, a Washington Municipal Corporation, *Defendant-Appellee*. | No. 16-35368 D.C. No. 2:14-cv-01804-MJP ORDER CERTIFYING QUESTION TO WASHINGTON STATE SUPREME COURT |

Filed August 14, 2018

Before:  Ronald M. Gould and Sandra S. Ikuta, Circuit Judges, and John R. Tunheim,[*] Chief District Judge.

Order

## SUMMARY[**]

### Certified Question to Washington Supreme Court

The panel certified the following question of state law to the Supreme Court of Washington:

> Is party A (here the Port of Bellingham) liable as a premises owner for an injury that occurs on part of a leased property used exclusively by party B (here the Alaska Marine Highway System – the "Ferry") at the time of the injury, where the lease has transferred only priority usage, defined as a superior but not exclusive right to use that part of the property, to party B, but reserves the rights of party A to allow third-party use that does not interfere

---

[*] The Honorable John R. Tunheim, Chief United States District Judge for the District of Minnesota, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

with party B's priority use of that part of the property, and where party A had responsibility for maintenance and repair of that part of the property?

## COUNSEL

Michael Barr King (argued), Jason W. Anderson, and Rory D. Cosgrove, Carney Badley Spellman P.S., Seattle, Washington; Frank J. Chmelik and Seth A. Woolson, Chmelik Sitkin & Davis P.S., Bellingham, Washington; for Defendant-Appellant/Cross-Appellee.

Philip A. Talmadge (argued), Talmadge/Fitzpatrick/Tribe, Seattle, Washington; James Jacobsen and Joseph Stacey, Stacey & Jacobsen LLP, Seattle, Washington; for Plaintiffs-Appellees/Cross-Appellants.

## ORDER

We respectfully ask the Washington State Supreme Court to answer the certified question presented below, pursuant to Revised Code of Washington § 2.60.020, because we have concluded that maritime law does not apply to these claims, and therefore "it is necessary to ascertain the local law of [Washington] state in order to dispose of [this] proceeding and the local law has not been clearly determined."

This case involves a tort claim under Washington law for which a jury awarded approximately $16,000,000 in damages to Sharon Adamson, the plaintiff. Adamson's damages arose when a passenger ramp that she was operating at the Port of

Bellingham ("the Port") fell about 15 feet, snapping the cables that supported it, and causing her severe injuries. The Port claimed that it was not liable for the damages, because the ramp was under the exclusive control of its tenant, the Alaska Marine Highway System ("the Ferry"), at the time of the accident. On the Port's theory, it was liable only for notifying the Ferry of hidden defects, and had no duty as a possessor of land. *See* Restatement (Second) of Torts §§ 328E, 343, 343A, 356, 360. The plaintiffs claimed and the district court held, in contrast, that under the lease the Port was liable as a possessor of land for damages occurring on the ramp.

# I

We summarize the material facts. At the time of the accident, Adamson, an employee of the Ferry, was operating a passenger ramp at the Port's Bellingham Cruise Terminal facility. The ramp was designed to be raised and lowered with three-quarter inch thick cables. But once the ramp was in the proper position for passengers to board or disembark from a ship, hydraulic pins would be inserted to hold the ramp in place, rather than requiring the cables to bear the weight of people crossing the ramp.

There was, however, a flaw in this system: Once the pins were in place, it was still possible to continue to unspool the cables. Although the pins would prevent the ramp from descending, slack would build up in the cables. And then if the pins were removed while there was slack in the cables, the ramp would drop precipitously until the cables caught the slack—assuming that the cables could withstand the force of the ramp's fall.

While she was operating the ramp, Adamson attempted to lower the ramp while the pins were in place, putting slack in the cables. She then removed the pins and the ramp dropped about 15 feet, severing the cables, and causing Adamson's extensive injuries. Available evidence showed that the ramp could have been modified at little cost to prevent slack in the cables when the pins were in place, thus preventing the serious type of injury that occurred in this case. Evidence also showed that the Port was aware of the potential risk because a similar incident had occurred previously, but fortunately without any resulting injuries.

The district court held as a matter of law that based on the agreement between the Port and the Ferry, the Port had not conveyed exclusive possession to the Ferry and that the Port faced liability as a possessor of property. The district court instructed the jury in accordance with this holding, and the jury returned a verdict in favor of Adamson and against the Port.

The agreement between the Port and the Ferry contains the following provisions that are relevant to the issues on appeal:

(1) Section 1.2 describes the leased premises. It notes that the Ferry will have "exclusive use" of the "Reservation and Ticketing Office," the "Bellingham Cruise Terminal Manager's office," "the Warehouse space located in Warehouse No. 4," and "the Staging and pursuer booth." The Ferry will have "priority use" of "approximately 125 parking spaces" and "the Marine Facilities, including the vehicle ramp, passenger ramp, and Berth 1—Pier and Dolphins." The passenger ramp was the location of the injury.

(2) Section 1.3 defines "exclusive use" to mean "the sole possession and control of Areas subject only to the terms and conditions of this Lease."

(3) Section 1.4 defines "priority use" to mean "the [Ferry] is entitled to superior but not exclusive right of use to the identified areas. The [Port] may allow other uses of the priority use areas so long as such use does not unreasonably interfere with [the Ferry's] use."

(4) Section 4.1 of the agreement states that "[t]he lessor will be solely responsible for keeping the leased premises in good repair and tenantable condition. The term 'repair' includes repairs of any type including but not limited to exterior and interior, structural and nonstructural, routine or periodic, except as in case of damage arising from the negligence of the [Ferry's] agents or employees."

(5) Section 5.1 of the lease allows the Ferry "to make alterations of additions in or to the premises only with written consent of the Lessor, which consent will not unreasonably be withheld."

**II**

On Appeal the Port contends vigorously that under Washington law, whenever the Ferry was in port, exclusive control of the ramp passed to the Ferry, and the Port was no longer liable to the Ferry's invitees. In support of this conclusion, the Port argues, first, that the priority use provision meant, as a practical matter, that the Ferry had exclusive control over the ramp whenever it was in port; only

one ship could be docked at the ramp at a time. And the Port argued second, that it never allowed a third party to use the ramp for docking purposes, so, in fact, only the Ferry ever used the ramp.[1]

As we understand Washington law, as a general rule property that is conveyed to a lessee becomes the responsibility of the lessee, and the landlord is no longer treated as a possessor of land. *See* Restatement (Second) of Torts § 328E (1965); *Regan v. City of Seattle*, 76 Wash. 2d 501, 504 (1969) ("the lessee takes the property subject to all apparent defects; and, with some exceptions, the lessor is not liable for injuries caused by apparent defects after exclusive control of the property has passed to the lessee . . . a lessor owes no greater duty to invitees, guests or sublessees of his tenant than he does to the tenant himself"); *Clemmons v. Fidler*, 58 Wash. App. 32, 38 (1990). But where property is given over to the use of a tenant, some parts of the property can be the responsibility of the tenant, while other parts of the property remain the responsibility of the landlord. *See Andrews v. McCutcheon*, 17 Wash. 2d 340 (1943) (upholding jury's conclusion that a landlord maintained control of a stairway that provided access to the leased premises and was liable for an injury occurring in the stairway, despite the fact that normally a stairway to the leased premises used exclusively by the tenant would be considered part of the leased premises and hence the responsibility of the tenant). As a general rule, the landlord has a responsibility "to exercise reasonable care to maintain common areas in a safe condition," *Mucsi v. Graoch Assocs. Ltd. P'ship No. 12*,

---

[1] Adamson cross-appealed, urging us to sustain the jury's verdict under a federal maritime negligence theory. We have rejected this argument in an opinion filed concurrently herewith.

144 Wash. 2d 847, 863 (2001), but not areas where "other tenants and the general public have no right of access." *Resident Action Council v. Seattle Hous. Auth.*, 162 Wash. 2d 773, 780–81 (2008).

Also, as we understand Washington law, property can become the responsibility of a lessee, even if rented only for a short period of time. *Hughes v. Chehalis Sch. Dist.*, 61 Wash. 2d 222, 224 (1963) (holding that a landlord tenant relationship had been created even where the property was only leased for an evening). And property can be the responsibility of the lessee even if the agreement between the parties includes some reservations regarding use. *See Regan*, 76 Wash. 2d at 504 ("If this control has passed, even though the use is restricted by limitations or reservations, then a landlord-tenant relationship is established").

But we find little guidance in the Washington precedents on how to assess which parts of the property given over to the use of a tenant count as parts of the property transferred into the tenant's control, rather than portions of the property "the tenant is entitled to use as appurtenant to the part leased to him." Restatement (Second) of Property: Landlord & Tenant, § 17.3 (1997). Here, for instance, the question of usage is mixed. As a practical matter, only the Ferry used the passenger ramp, and the priority use provision effectively gave the Ferry exclusive control of the ramp when it was in Port—no other ship could dock at that time. But the agreement also gave the Port control over the ramp when the Ferry was not in port. For example, the Port could allow third parties to use the ramp without material restriction when the Ferry was not there. The Port also had responsibilities for maintenance and repair of the ramp, and could have had access to the ramp to make such repairs at any time

throughout the lease term when the Ferry was not docked. And the Ferry could not unilaterally alter the ramp without the Port's consent.

Under these circumstances, this case offers the Washington State Supreme Court the opportunity to provide more clarity about the conditions under which a lessor is absolved of responsibility for injuries occurring on a part of the property subject to a mixed use by both lessor and lessee. Especially relevant here is the apportionment of responsibility where the lessee, as a practical matter, has exclusive use of a part of the property for intermittent periods of time, short of the entire term of the lease agreement.

Because we have concluded that this important question of Washington law is not entirely settled and involves matters of policy best left to resolution by the State of Washington's highest court, certification of a question to the Washington State Supreme Court is the most appropriate course of action. If the Washington State Supreme Court concludes that a lessee's right to priority usage of a part of a facility is sufficient to transfer responsibility for injuries entirely away from the lessor, we will reverse the district court with instructions to hold a new trial that appropriately instructs the jury on bases of liability not premised on the assumption that the Port is liable as a premises owner. If, however, the Washington State Supreme Court decides that a priority usage agreement does not absolve a landlord of liability as a possessor of property, we will affirm the district court.

### III

In light of the foregoing discussion, and because the answer to this question is "necessary to ascertain the local law

of this state in order to dispose" of this appeal, RCW § 2.60.020, we respectfully certify to the Washington State Supreme Court the following question:

> Is party A (here, the Port) liable as a premises owner for an injury that occurs on part of a leased property used exclusively by party B (here, the Ferry) at the time of the injury, where the lease has transferred only priority usage, defined as a superior but not exclusive right to use that part of the property, to party B, but reserves the rights of party A to allow third-party use that does not interfere with party B's priority use of that part of the property, and where party A had responsibility for maintenance and repair of that part of the property?

> Perhaps stated more broadly, the question of Washington law presented is whether priority use can be considered to give exclusive control, and if so in what circumstances?

We do not intend our framing of this question to restrict the Washington State Supreme Court's consideration of any issues that it determines are relevant. If the Washington State Supreme Court decides to consider the certified question, it may in its discretion reformulate the question. *Broad v. Mannesmann Anlagenbau AG*, 196 F.3d 1075, 1076 (9th Cir. 1999).

If the Washington State Supreme Court accepts review of the certified question, we designate appellant Port of Bellingham as the party to file the first brief pursuant to

Washington Rule of Appellate Procedure ("WRAP") 16.16(e)(1).

The clerk of our court is hereby ordered to transmit forthwith to the Washington State Supreme Court, under official seal of the United States Court of Appeals for the Ninth Circuit, a copy of this order and all relevant briefs and excerpts of record pursuant to Revised Code of Washington §§ 2.60.010, 2.60.030 and WRAP 16.16.

Further proceedings in our court are stayed pending the Washington State Supreme Court's decision whether it will accept review, and if so, receipt of the answer to the certified question. This case is withdrawn from submission until further order from this court. The panel will resume control and jurisdiction on the certified question upon receiving an answer to the certified question or upon the Washington State Supreme Court's decision to decline to answer the certified question. When the Washington State Supreme Court decides whether or not to accept the certified question, the parties shall file a joint report informing this court of the decision. If the Washington State Supreme Court accepts the certified question, the parties shall file a joint status report every six months after the date of the acceptance, or more frequently if circumstances warrant.

It is so **ORDERED**.