**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| WALLEN LAWSON,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>PPG ARCHITECTURAL<br>FINISHES, INC.,<br>*Defendant-Appellee.* | No. 19-55802<br><br>D.C. No.<br>8:18-cv-00705-AG-JPR<br><br>ORDER CERTIFYING<br>QUESTION TO THE<br>SUPREME COURT OF<br>CALIFORNIA |

Filed December 7, 2020

Before: Kermit V. Lipez,[*] Johnnie B. Rawlinson, and
N. Randy Smith, Circuit Judges.

Order

---

[*] The Honorable Kermit V. Lipez, United States Circuit Judge for the First Circuit, sitting by designation.

## SUMMARY[**]

### Certification to State Supreme Court

The panel certified the following question to the Supreme Court of California:

> Does the evidentiary standard set forth in section 1102.6 of the California Labor Code replace the *McDonnell Douglas* test as the relevant evidentiary standard for retaliation claims brought pursuant to section 1102.5 of California's Labor Code?

### ORDER

Before this panel of the United States Court of Appeals for the Ninth Circuit is an appeal concerning the appropriate evidentiary standard for California Labor Code section 1102.5 retaliation claims. As we are aware of no controlling state precedent that resolves this issue, we respectfully ask the Supreme Court of California to exercise its discretion to accept and decide the certified question below.

### I.  Question Certified

Pursuant to Rule 8.548 of the California Rules of Court, we request that the Supreme Court of California answer the following question:  Does the evidentiary standard set forth

---

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

in section 1102.6 of the California Labor Code replace the *McDonnell Douglas* test as the relevant evidentiary standard for retaliation claims brought pursuant to section 1102.5 of California's Labor Code?  We understand that the Court may reformulate our question, and we agree to accept and follow the Court's decision.  Cal. R. Ct. 8.548(b)(2), (f)(5).

## II.  Background

### A.  Facts[1]

PPG Architectural Finishes, Inc. ("PPG") manufactures paints, stains, caulks and other products for homeowners and professionals, and sells its products to retailers such as The Home Depot, Menards, and Lowe's.  Wallen Lawson began working as a Territory Manager ("TM") for PPG in June 2015.  Lawson's duties as a TM included, among other things, merchandising PPG products in Lowe's Home Improvement stores and ensuring that PPG's displays were stocked and in good condition.  Lawson reported directly to Clarence Moore, a Regional Sales Manager ("RSM"), who oversaw approximately a dozen TMs, including Lawson.

Lawson's performance as a TM was measured based on two metrics: (1) his ability to meet monthly sales goals, and (2) the score he received on "Market Walks."  Market Walks involved the RSMs and TMs "visit[ing] several stores within the TM's assigned territory and walk[ing] through the store to ensure TMs were building relationships with Lowe's

---

[1] Because we are reviewing a grant of summary judgment, the evidence is presented as we must view it: in the light most favorable to Lawson, the nonmoving party.  *See L.F. v. Lake Wash. Sch. Dist. #414*, 947 F.3d 621, 625 (9th Cir. 2020).

employees, PPG product is properly placed throughout the store, and TMs are training and helping customers." *Lawson v. PPG Architectural Finishes, Inc.*, No. SACV 18-00705 AG (JPRx), 2019 WL 3308827, at *1 (C.D. Cal. June 21, 2019) (alterations adopted) (internal quotation marks omitted) (unpublished). TMs were then "scored on a five-category spectrum ranging from . . . 'unsuccessful' to 'exceptional'" based on their performance during these Market Walks. *Id.*

PPG management conducted several Market Walks with Lawson between October 2016 and August 2017. On the first Market Walk—the only Market Walk not conducted with Moore—Lawson received an "exceptional" score. On the second, Lawson received a "marginal" score. Lawson's scores dropped to "unsuccessful" on his third and fourth Market Walks.[2]

In April 2017, around the time of Lawson's fourth Market Walk, Moore instructed the TMs under his supervision to intentionally "mis-tint"[3] PPG products at Lowe's stores. This fraudulent practice allowed PPG to avoid buying back the mis-tinted product from Lowe's, and forced Lowe's to sell

---

[2] Lawson also missed his monthly sales goals eight times in the year leading up to March 2017.

[3] As Lawson explains in his opening brief, paint is generally "shipped from the factory as a neutral base formula without pigment, and then tinted to the customer's requested color at the Lowe's paint desk using a machine that mixes pigments into the base formula." Though "Lowe's associates typically operate the tinting machine, [TMs] would frequently cover the paint desk while the Lowe's associates were at lunch or on break," allowing the TMs the opportunity to intentionally mis-tint paint. If paint was mis-tinted, it was considered sold to Lowe's, presenting PPG with an opportunity to fraudulently remove slow-selling product from its inventory.

the product at a deep discount. Lawson fundamentally disagreed with this practice, and submitted an anonymous report to PPG's web-based ethics reporting portal on April 21, 2017, which detailed Moore's directive. Nothing developed from this first report. But soon thereafter, Lawson spoke with Moore over the phone regarding the mis-tinting directive, telling Moore that there was "no way" he was going to intentionally mis-tint the product.

That same month, April 2017, Lawson was placed on a Performance Improvement Plan ("PIP"), which required, among other things, a "successful" score on a Market Walk by the time the PIP expired in July 2017. Before the July Market Walk took place, Lawson filed a second anonymous complaint regarding the mis-tinting directives on June 15, 2017. This complaint led to an investigation; after the investigation, PPG instructed Moore to tell his TMs (via text message) to immediately stop mis-tinting PPG products. However, during and after this investigation, Moore continued to supervise Lawson and oversee Lawson's Market Walks.

Lawson received only a "marginal" score on his July 13 Market Walk. Despite this subpar score, Lawson's PIP was extended by thirty days, and he was given another shot at earning a "successful" score. But Lawson fared even worse on his August Market Walk, resulting in both Moore and Moore's supervisor (Divisional Manager Sean Kacsir) recommending termination. Lawson was subsequently terminated on September 6, 2017.

Because he (1) expressed his disapproval of the mis-tinting directive leading to PPG's investigation of Moore and (2) confronted Moore about the directive, Lawson believes

that Moore knew he was the one who reported Moore's misconduct. Lawson also believes this knowledge influenced the poor scores he received from Moore in his July and August Market Walks and motivated Moore's recommendation that Lawson be terminated.

## B. Procedural History

Based on these beliefs, Lawson brought claims for (1) retaliation in violation of California Labor Code section 1102.5, and (2) wrongful termination in violation of public policy.[4]  *Id.*  The district court granted PPG's motion for summary judgment on both claims.  *See id.*  In dismissing the claims, the court applied the *McDonnell Douglas* "burden-shifting" framework[5] to Lawson's section 1102.5 retaliation claim.  *Id.* at *3–5.  This test requires the plaintiff to first establish, by a preponderance of the evidence, a prima facie case of retaliation.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  If the plaintiff can do so, the defendant must carry a burden of production "to articulate some legitimate, nondiscriminatory reason for the [adverse

---

[4] Lawson brought four additional claims, all of which were dismissed on summary judgment.  However, Lawson does not appeal these other claims.

[5] It should be noted that, under *McDonnell Douglas*, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). However, *McDonnell Douglas* is nevertheless commonly referenced as a "burden shifting" framework because, at step two, the defendant bears "the burden of 'producing evidence' that the adverse employment actions were taken 'for a legitimate, nondiscriminatory reason.'"  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (quoting *Burdine*, 450 U.S. at 254).

employment action].” *Id.* If the defendant can carry its burden of production, the plaintiff is “afforded a fair opportunity to show that [the employer]’s stated reason for [the employee]’s rejection [or dismissal] was in fact pretext.” *Id.* at 804.

Applying this burden-shifting framework to Lawson’s section 1102.5 claim, the district court first found that Lawson had made out a prima facie case for retaliation under section 1102.5. *Lawson*, 2019 WL 3308827, at *3–4. The court then found that PPG bore its burden to produce evidence of a legitimate, nondiscriminatory reason for Lawson’s termination. The court found that PPG had done so with its evidence that Lawson was fired for failing to meet the performance expectations set forth in his PIP. *Id.* at *4.

But the district court concluded that Lawson failed to carry his burden “to raise triable issues of fact regarding pretext.” *Id.* In so doing, the court found, among other things, that: (1) no reasonable jury would find Lawson’s decline in Market Walk scores attributable to retaliatory intent, and (2) PPG’s reasons for firing Lawson did not shift over time. *Id.* at *4–5. On these bases, the district court granted PPG’s motion for summary judgment on the first claim. *Id.* at *5. Then, finding that Lawson’s claim for wrongful termination in violation of public policy “depends entirely on the sufficiency of [his] retaliation claim . . . in the previous section,” the district court also granted summary judgment on this second claim. *Id.* at *5.

On appeal, Lawson argues that the district court erred in applying the *McDonnell Douglas* test to his section 1102.5 retaliation claim. Instead, he argues that the district court should have applied the materially different evidentiary

standard set forth in section 1102.6.  Having considered the parties' briefs and arguments, we are convinced that Lawson's claims turn on the application of the proper evidentiary standard.   Because the Supreme Court of California has provided no clear guidance on this specific question,[6] we request clarification regarding the applicable evidentiary standard for Lawson's section 1102.5 retaliation claim.

## III.  Explanation of Certification

The sole question for the Supreme Court of California is this: what is the appropriate evidentiary standard for Lawson's section 1102.5 retaliation claims?  The district court applied the *McDonnell Douglas* test; Lawson argues that the standard set forth in section 1102.6 should apply.  However, before analyzing the important distinctions between the two standards, it is important to (1) discuss the basis for the district court's application of the *McDonnell Douglas* test, and (2) highlight the confusion among both state and federal courts regarding which standard applies to section 1102.5 retaliation claims.

---

[6] The Supreme Court of California has cited section 1102.6 in only one case.  *See Harris v City of Santa Monica*, 294 P.3d 49, 71 (Cal. 2013).  Though the language of that case indicated that the section 1102.6 standard applies to section 1102.5 retaliation claims, *see id.*, it did not thoroughly address the question at issue here—whether section 1102.6 replaced the *McDonnell Douglas* test for section 1102.5 claims.

**A. History of courts' inconsistent application of *McDonnell Douglas* to section 1102.5 retaliation claims.**

The *McDonnell Douglas* test originated in the context of a Title VII case, where a plaintiff was required to show that he was denied employment "because of his involvement in civil rights activities" or "because of his race and color." 411 U.S. at 801. *McDonnell Douglas*'s burden-shifting framework was subsequently adopted by California state courts because they found Title VII claims analogous to California's "retaliatory employment termination" claims and thought federal case law provided helpful guidance for the adjudication of these state-law claims. *See Flait v. N. Am. Watch Corp.*, 4 Cal. Rptr. 2d 522, 528 (Ct. App. 1992) (noting that "[l]awsuits claiming retaliatory employment termination . . . are analogous to federal Title VII claims, and are evaluated under federal law interpreting Title VII cases"); *see also Clark v. Claremont Univ. Ctr.*, 8 Cal. Rptr. 2d 151, 164 (Ct. App. 1992) ("We hold the federal *McDonnell Douglas* test provides the applicable standard of proof in this case. Other published decisions under [California's Fair Employment and Housing Act] have repeatedly referred to federal decisions under [T]itle VII for guidance, under the theory that our 'courts, while not bound, cannot overlook the applicable federal law in a significant and emerging area, such as [employment] discrimination.'" (third alteration in original) (citing numerous California cases)). The district court's application of the *McDonnell Douglas* test in this case is thus grounded in the California courts' long-standing application of *McDonnell Douglas*'s burden-shifting

framework in the context of discrimination and retaliation cases.[7] *Lawson*, 2019 WL 3308827, at *3.

However, the continued application of *McDonnell Douglas* to section 1102.5 retaliation claims seems to ignore a critical intervening statutory amendment. In 2003, the California legislature passed Senate Bill 777, which "establish[ed] the evidentiary burdens of the parties participating in a civil action or administrative hearing involving an alleged violation of" section 1102.5. 2003 Cal. Legis. Serv. Ch. 484 (S.B. 777) (West). Specifically, and among other changes not relevant here, the Bill added section 1102.6 to California's Labor Code, which provides that:

> In a civil action or administrative proceeding brought pursuant to Section 1102.5, once it has been demonstrated by a preponderance of the evidence that an activity proscribed by Section 1102.5 was a contributing factor in the alleged prohibited action against the employee, the employer shall have the burden of proof to demonstrate by clear and

---

[7] Indeed, the district court in this case cited *Ferretti v. Pfizer Inc.*, No. 11-CV-04486, 2013 WL 140088, at *10 (N.D.Cal. Jan. 10, 2013) (unpublished) in support of its assertion that *McDonnell Douglas* provides the applicable test for section 1102.5 claims. *See Lawson*, 2019 WL 3308827, at *3. *Ferretti*, in turn, cited *Patten v. Grant Joint Union High Sch. Dist.*, 37 Cal. Rptr. 3d 113 (Ct. App. 2005) to support this same proposition. *Ferretti*, 2013 WL 140088 at *8. And *Patten*'s application of the *McDonnell Douglas* test to section 1102.5 claims was based on *Flait*, *see Patten*, 37 Cal. Rptr. 3d at 116, which (as noted above) applied this burden-shifting framework, because "[l]awsuits claiming retaliatory employment termination in violation of [California law] are analogous to federal Title VII claims," and should therefore be "evaluated under federal law interpreting Title VII cases," 4 Cal. Rptr. 2d at 528.

convincing evidence that the alleged action would have occurred for legitimate, independent reasons even if the employee had not engaged in activities protected by Section 1102.5.

The California legislature thus expressly adopted a burden-shifting evidentiary standard that seemingly replaced the *McDonnell Douglas* test for section 1102.5 retaliation claims.[8] The legislative history, though not dispositive, reinforces this statutory history and the plain language of section 1102.6. *See* S. Rules Comm. 2003–2004 Reg. Sess., Cal. Bill Analysis at *Analysis*, sec. 4 (Aug. 18, 2003) (noting that the Bill was intended to replace the *McDonnell Douglas* test for section 1102.5 claims with a standard that "requires the employer to make [the necessary showing] by clear and convincing evidence").[9]

---

[8] PPG argues that Lawson's "reliance on section 1102.6 is overstated," because this new standard only applies to "mixed-motive" claims. *Cf. Huynh v. Wal-Mart Assocs., Inc.*, No. 18-cv-01631-VC, 2020 WL 218522, at *1 (N.D. Cal. Jan, 14, 2020) (unpublished) (citing Judicial Council Of California Civil Jury Instruction 4604 in support of the assertion that section 1102.6 is to be applied "only in 'mixed-motive' cases"); *Zelaya v. RMI Int'l, Inc.*, No. B251191, 2016 WL 1169405, at *12 (Cal. Ct. App. March 24, 2016) (unpublished) (indicating that the section 1102.6 standard only applies if there is a "mixed motive" instruction). However, the plain language of the provision imposes no such limitation. Nor does the statute's context indicate such a limitation. Rather, section 1102.6 would appear to apply to *any and every* whistleblower claim brought under section 1102.5.

[9] In full, the legislative history provided the following analysis: "Existing law provides that, after a plaintiff shows by a preponderance of evidence that the action taken by the employer is proscribed by the whistle blower statute, the burden shifts to the employer to show . . . that the alleged action would have occurred for legitimate, independent reasons

However, despite the fact that section 1102.6 provides a separate evidentiary standard that would seem to replace the *McDonnell Douglas* test for section 1102.5 claims, three published California appellate court decisions expressly applied the *McDonnell Douglas* test to section 1102.5 claims *after* the addition of section 1102.6. *See Hager v. County of Los Angeles*, 176 Cal. Rptr. 3d 268, 269–70 (Ct. App. 2014); *Patten*, 37 Cal. Rptr. 3d at 117 (applying the *McDonnell Douglas* framework to a retaliation claim brought pursuant to section 1102.5); *Mokler v. County of Orange*, 68 Cal. Rptr. 3d 568, 580–81 (Ct. App. 2007) (same).[10]  Although neither *Hager*, *Patten*, nor *Mokler* even cites, much less

---

even if the employee had not engaged in activities protected by the whistleblower statute."  S. Rules Comm. 2003–2004 Reg. Sess., Cal. Bill Analysis at *Analysis*, sec. 4 (Aug. 18, 2003) (citing *McDonnell Douglas*, 411 U.S. 792).  The history then stated that "[t]his bill *instead* requires the employer to make that showing by clear and convincing evidence."  *Id.* (emphasis added).

[10] PPG cites an additional published California case that it argues does the same thing: *Taswell v. Regents of the Univ. of Cal.*, 232 Cal. Rptr. 3d 628 (Ct. App. 2018).  *Taswell*, however, does not necessarily fall into the same bucket as *Hager*, *Patten*, and *Mokler*.  That court never expressly applied the *McDonnell Douglas* burden-shifting framework specifically to the plaintiff's 1102.5 claims and is therefore somewhat distinguishable from these other cases.

Additionally, Lawson argues that two of these opinions—*Patten* and *Mokler*—should be disregarded, because the claims were *brought* prior to the statutory amendment and the addition of section 1102.6.  Even assuming Lawson's observation is correct, these cases cannot so easily be dismissed.  California appellate courts have a general rule that they "apply the law in effect *at the time of review*," not the law in effect when the underlying facts occurred or when the claims were brought.  *City of Grass Valley v. Cohen*, 226 Cal. Rptr. 3d 543, 553 (Ct. App. 2017).  Thus, these decisions—issued in 2005 and 2007—should have taken section 1102.6 into account.

meaningfully deals with, section 1102.6, these cases have sown widespread confusion as to which evidentiary standard actually applies to section 1102.5 retaliation claims.

Indeed, despite the analysis in *Hager*, *Patten*, and *Mokler*, some California courts have applied the section 1102.6 evidentiary standard to section 1102.5 claims—including in a recent *published* California appellate court decision, *see Willis v. City of Carlsbad*, 262 Cal. Rptr. 3d 528, 549 n.13 (Ct. App. 2020).[11] Some federal courts have followed suit.[12] However, other courts—both state and federal—insist that the *McDonnell Douglas* test continues to apply to section 1102.5

---

[11] There are several other California cases that take the same approach. *See, e.g.*, *Sanders v. County of Los Angeles*, No. B267619, 2018 WL 1044239, at *7 n.4 (Cal. Ct. App. Feb. 26, 2018) (unpublished) (noting that section 1102.6 provides the evidentiary standard for section 1102.5 retaliation claims); *Tenpas v. Riverside Cmty. Coll. Dist.*, No. D073007, 2018 WL 845916, at *7–16 (Cal. Ct. App. Feb. 13, 2018) (unpublished) (applying the *McDonnell Douglas* test to retaliation claims brought pursuant to California's Fair Employment & Housing Act, but section 1102.6's "clear and convincing evidence standard" to section 1102.5 retaliation claims); *Marcario v. County of Orange*, No. G0419281, 2010 WL 3505157, *7 (Cal. Ct. App. Sept. 8, 2010) (unpublished) (stating that "section 1102.6[ is] the statute specifying what must be proved in [a section 1102.5] case").

[12] *See, e.g.*, *Monaghan v. Telecom Italia Sparkle of N. Am., Inc.*, No. CV 13-00646 ABC (PLAx), 2013 WL 12171957, at *10 (C.D. Cal. July 22, 2013) (unpublished) ("Labor Code [section] 1102.6 sets forth the burdens of proof for a [section] 1102.5 claim . . . ."); *Kumar v. Alameda Cty. Med. Ctr.*, No. 09-4312 EDL, 2011 WL 13244636, at *10–14 (N.D. Cal. Mar. 25, 2011) (unpublished) (applying the *McDonnell Douglas* test to retaliation claims brought pursuant to California's Fair Employment & Housing Act, but section 1102.6's "clear and convincing evidence standard" to section 1102.5 retaliation claims); *Greer v. Lockheed Martin Corp.*, 855 F. Supp. 2d 979, 988–89 (N.D. Cal. 2012) (applying the section 1102.6 standard to a section 1102.5 retaliation claim).

claims.**¹³**  Others confusingly cite the two different standards simultaneously.**¹⁴**  And some argue that *McDonnell Douglas* provides the relevant standard at the summary judgment

---

**¹³** *See, e.g.*, *Nikmanesh v. Walmart Inc.*, 789 F. App'x 30, 31–32 (9th Cir. 2019) (unpublished); *Sorensen v. Nat'l R.R. Passenger Corp.*, 786 F. App'x 652, 653 (9th Cir. 2019) (unpublished); *Carter v. Nat'l R.R. Passenger Corp.*, No. CV 18-9652 PSG (JCx), 2020 WL 2475085, at \*8 (C.D. Cal. Jan. 24, 2020) (unpublished) ("California courts apply the three-stage burden shifting test from *McDonnell Douglas* to retaliation claims under both FEHA *and* Cal[ifornia] Lab[or] Code [section] 1102.5." (emphasis added)); *Ruiz v. Paradigmworks Grp., Inc.*, No. 16-CV-2993-CAB-BGS, 2020 WL 133905, at \*3 (S.D. Cal. Jan. 13, 2020) (unpublished) (citing *Taswell* for the proposition that *McDonnell Douglas* should be applied to section 1102.5 claims); *Abdel v. Ikon Office Sols., Inc.*, No. C-05-1685 JCS, 2006 WL 2474331, at \*10 n.5 (N.D. Cal. Aug. 25. 2006) (unpublished) (citing *Patten* for support of the proposition that *McDonnell Douglas* rather than section 1102.6 applies to section 1102.5 claims); *Fanfassian v. City of L.A.*, No. B259019, 2016 WL 6777809, at \*6 n.1 (Cal. Ct. App. Nov. 16 2016) (unpublished) (applying *McDonnell Douglas* in the context of a section 1102.5 claim, and finding that "[t]he clear-and-convincing standard set forth in . . . section 1102.6 is not applicable to the *McDonnell–Douglas* burden-shifting analysis").

**¹⁴** *See, e.g.*, *Canupp v.Children's Receiving Home of Sacramento*, 181 F. Supp. 3d 767, 789 (E.D. Cal. 2016) (stating that "[c]ourts analyzing claims under [s]ection 1102.5 apply the burden[-]shifting analysis first set forth . . . in *McDonnell Douglas*"); *id.* at 795 (citing the section 1102.6 standard as that which the jury must ultimately apply); *Yau v. Saint Francis Mem'l Hosp.*, No. 13-cv-02558-DMR, 2015 WL 3639521, at \*12 (N.D. Cal. June 11, 2015*)* (unpublished) (citing both standards in its discussion of what a plaintiff needs to do to prove a section 1102.5 retaliation claim); *Hoeper v. City & County of San Francisco*, Nos. A151824, A152204, A152539, 2020 WL 740478, at \*12 (Cal. Ct. App. Feb. 13, 2020) (unpublished) (citing both standards in support of the statement that "the plaintiff must prove the employer's explanation is merely a pretext for the alleged retaliation"); *Mena v. Kern High Sch. Dist.*, No. F073011, 2017 WL 2793856, at \*2–3 (Cal. Ct. App. June 28, 2017) (unpublished).

stage, while others insist that section 1102.6 should be applied at that stage.[15]

Thus, the basis for our question is this: California statutory law seems to provide one standard, while some California courts have provided (though inconsistently, as discussed above) another and materially different standard.

## B. Differences between the evidentiary standards set forth in *McDonnell Douglas* and section 1102.6 are material.

These disagreements over the appropriate standard are material.  Lawson asserts that the section 1102.6 evidentiary standard "is entirely different from the *McDonnell Douglas* analysis."  Lawson is right; there are several key differences between the two standards.

First, unlike *McDonnell Douglas*, section 1102.6 sets forth a burden-of-persuasion-shifting evidentiary standard. As explained above, *see* discussion *supra* at pg. 6 and note 5, the burden of persuasion under *McDonnell Douglas* never truly shifts from the plaintiff.  *See Burdine*, 450 U.S. at 253

---

[15] *Compare Salud v. Expediters Int'l*, No. 18-cv-01677-YGR, 2020 WL 1820735, at *6 (N.D. Cal. Apr. 10, 2020) (unpublished) (stating that *McDonnnell Douglas*'s burden-shifting framework, rather than the section 1102.6 standard, applies at the summary judgment stage of section 1102.5 claims), *and Abdel*, 2006 WL 2474331, at *10 n.5 (stating that section 1102.6 "does not alter the analysis of pretext at the summary judgment stage in cases involving [section] 1102.5"), *with Mango v. City of Maywood*, No. CV 11-5641-GW(FFMx), 2012 WL 5906665, at *16 n.13 (C.D. Cal. Oct. 5, 2012) (unpublished) (stating that section 1102.6 sets forth the standard that should be applied to section 1102.5 claims on summary judgment).

("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."). The defendant's only burden (at step two of the analysis) is that of production; it must merely "produc[e] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Id.* at 254. Thus, under *McDonnell Douglas*, "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons." *Id.*

However, under section 1102.6, once the plaintiff has carried his initial burden to show that activity protected by section 1102.5 "was a contributing factor in the alleged prohibited action," the burden of persuasion shifts from the plaintiff to the defendant "to demonstrate by clear and convincing evidence that the alleged action would have occurred for legitimate, independent reasons even if the employee had not engaged in activities protected by [s]ection 1102.5." Cal. Lab. Code § 1102.6. Section 1102.6 therefore forces the defendant to introduce evidence sufficient to *persuade* the trier of fact that the employment action was indeed lawful. *See id.* Additionally, unlike *McDonnell Douglas*, the plaintiff has no burden to show pretext under section 1102.6; once he has made his initial showing, the burden of persuasion stays with the defendant. *Id.*

A second difference between the two standards is that the defendant's burden under section 1102.6 to produce "clear and convincing evidence" is much heavier than the burden of production required under *McDonnell Douglas*. The clear and convincing evidence standard "requires 'an abiding conviction that the truth of the factual contentions' at issue is 'highly probable.'" *Mondaca-Vega v. Lynch*, 808 F.3d 413,

422 (9th Cir. 2015) (en banc) (alteration adopted) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)). This is a far cry from the burden of production required by *McDonnell Douglas*, where the defendant "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Burdine*, 450 U.S. at 257.

Finally, and aside from the plain differences between these frameworks, subjecting defendants in cases involving section 1102.5 retaliation claims to the lower *McDonnell Douglas* standard does some damage to workers' rights. As we have observed in another context, "standards of proof serve a symbolic function." *Mondaca-Vega*, 808 F.3d at 422. And the California legislature's decision to apply a heightened evidentiary standard—such as clear and convincing evidence—to section 1102.5 retaliation claims indicates that there are "'particularly important interests' . . . at stake." *Id.* (quoting *California ex rel. Cooper v. Mitchell Bros.' Santa Ana Theater*, 454 U.S. 90, 93 (1981)). Thus, subjecting section 1102.5 retaliation claim defendants to *McDonnell Douglas*'s lesser evidentiary standard would subvert the California legislature's decision to afford plaintiffs bringing these claims heightened protection. *Cf. Araujo v. N.J. Transit Rail Operations, Inc.*, 708 F.3d 152, 157–58 (3d Cir. 2013) (contrasting the two standards and finding that the clear and convincing evidence standard "is much more protective of plaintiff–employees than the *McDonnell Douglas* framework").

For these reasons (and though we do not reach or attempt to resolve the merits under either standard here[16]), while the district court held that Lawson's claims failed under the *McDonnell Douglas* test, it seems reasonably clear that Lawson would survive summary judgment under section 1102.6. Thus, the decision of which standard ought to be applied is an important, outcome-determinative one.

\*\*\*

In conclusion, 17 years after the passage of section 1102.6, neither federal nor state courts can agree on the correct evidentiary standard for section 1102.5 retaliation claims. Lawson asks this court to bring California law into line with federal precedent consistent with the language of section 1102.6. However, it is distinctly out of place for a federal court to bring California law "into line," especially when we may request that the Supreme Court of California resolve the issue. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 79 (1997) ("Speculation by a federal court about the meaning of a state statute in the absence of prior state court adjudication is particularly gratuitous when the state courts stand willing to address questions of state law

---

[16] If the Supreme Court of California does agree to take up this question and concludes that the *McDonnell Douglas* test is the appropriate evidentiary standard for section 1102.5 claims, we will need to determine whether the district court properly applied it in this case. However, if the Supreme Court of California determines that section 1102.6 provides the correct evidentiary standard, the case will be remanded so that the district court might have the first crack at the application of that standard to the facts of this case. *See United States v. Sellers*, 906 F.3d 848, 855 (9th Cir. 2018) ("Because the district court applied an incorrect legal standard, we follow our normal practice of remanding to the district court to determine in the first instance whether" the correct standard has been met.).

on certification from a federal court." (alteration adopted) (quoting *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 510 (1985) (O'Connor, J., concurring))).   Because the existence of seemingly conflicting evidentiary standards in the context of section 1102.5 claims has caused no small amount of confusion to both state and federal courts, and because the answer to this question is necessary to dispose of this appeal, *see Adamson v. Port of Bellingham*, 899 F.3d 1047, 1051 (9th Cir. 2018), we request that the Supreme Court of California accept this certified question.

## IV.  Administrative Information

The names and addresses of counsel are listed in the appendix at the end of this order.  Cal. R. Ct. 8.548(b)(1).  If the Supreme Court of California accepts this request, the Plaintiff–Appellant, Wallen Lawson, should be deemed the petitioner.

The Clerk is hereby directed to transmit forthwith to the Court the original and ten copies of this order as well as a certificate of service to the parties.  Cal. R. Ct. 8.548(d).  The clerk shall also transmit along with this request: ten copies of the district court's "Order Regarding Defendant's Motion for Summary Judgment" and ten copies of the briefs of the parties in this appeal.  The Clerk shall also provide additional record material if so requested by the Supreme Court of California.  Cal. R. Ct. 8.548(c).

## V.  Stay of Proceedings and Withdrawal of Submission

In light of our decision to certify the issues set forth above, the submission of this appeal is withdrawn, and all further proceedings in this case before our court are stayed

pending final action by the Supreme Court of California, save for any petition for rehearing regarding this order.  The Clerk of this Court is directed to administratively close this docket, pending further order.  The parties shall notify the Clerk of this court within fourteen days of the Supreme Court of California's acceptance or rejection of certification, and again, if certification is accepted, within fourteen days of the Supreme Court of California's issuance of a decision.

**IT IS SO ORDERED.**

## Appendix

*Counsel for Plaintiff-Appellants*

Patrick Leo McGuigan
HKM Employment Attorneys LLP
600 Stewart Street
Suite # 901
Seattle, WA 98101

Bruce C. Fox
Obermayer Rebmann Maxwell & Hippel LLP
BNY Mellon Center
Suite # 5240
500 Grant Street
Pittsburgh, PA 15219

Andrew J. Horowitz
Obermayer Rebmann Maxwell & Hippel LLP
BNY Mellon Center
Suite # 5240
500 Grant Street
Pittsburgh, PA 15219

*Counsel for Defendant-Appellee*

Karin M. Cogbill
LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303

Michael W. M. Manoukian
LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303

Theodore A Schroeder
LITTLER MENDELSON, P.C.
625 Liberty Avenue, 26th Floor
Pittsburgh, PA 15222